## SEIBERT v. CITY OF INDIANAPOLIS.

[No. 6,332. Filed April 24, 1907. Rehearing denied May 28, 1907. Transfer denied June 28, 1907.]

1. MUNICIPAL CORPORATIONS. — *Street Improvements.* — *Patented Process.*—*Competition.*—*Contracts.*—A city cannot lawfully contract for the construction of a street pavement to be made by a patented process, where the patentee retains the exclusive right to use and to sell the right to use to others, the statute (§3519 Burns 1905, Acts 1905, pp. 219, 281, §95) requiring competitive bidding. p. 301.

2. WORDS AND PHRASES.—*"Bitulithic."*—The word "bitulithic" is a registered trade mark and imports a bituminous macadam pavement made according to a process patented by Warren Brothers Company. p. 303.

3. MUNICIPAL CORPORATIONS. — *Street Improvements.* — *Patented Process.*—*Contracts.*—*Competition.*—Under §3519 Burns 1905, Acts 1905, pp. 219, 281, §95, requiring competitive bidding and preventing collusion in the awarding of contracts for the construction of street improvements, a city cannot lawfully contract for the construction of a street pavement to be made of material manufactured by a designated company by its patented process, even though such company agreed with the city in advance that such material would be furnished to any bidder at a stipulated price, such price to include the services of a person, to be furnished by such company, to superintend the laying of such pavement. p. 303.

4. MUNICIPAL CORPORATIONS.—*Street Improvements.—Competition. —Statutes.—Purpose.*—The purpose of §3519 Burns 1905, Acts 1905, pp. 219. 281, §95, requiring competitive bidding and preventing collusion in the awarding of contracts for street improvements, was to protect the property owners; and city officials may not disregard the provisions thereof. p. 306.

5. SAME.—*Street Improvements.—Contracts.—Public Policy.*—Contracts for street improvements are void, where full competition in all respects is not assured, the public policy of the State, as expressed by the legislature, requiring same. p. 306.

From Superior Court of Marion County (70,529); *John L. McMaster,* Judge.

Suit by George W. Seibert against the City of Indianapolis and others. From a decree for defendants, plaintiff appeals. *Reversed.*

*Wilson & Townley,* for appellant.

*Ferdinand Winter, Elliott & Elliott* and *Frederick E. Matson,* for appellees.

ROBY, P. J.—The relief sought in this suit is an injunction against the city of Indianapolis to prevent its entering into a proposed contract for the construction upon State street in said city of a pavement of the type known as "Warren's patent bitulithic." The complaint contains eleven distinct specifications, each purporting to give a reason for the alleged invalidity of the proceeding which it is sought to enjoin. Separate demurrers for want of facts were addressed to each of said specifications, and sustained in part and overruled in part. The issue was closed by a general denial. Trial was had and much evidence heard. The court found for appellee. Appellant filed a motion for new trial which was overruled. A decree was entered on the finding. This appeal was at once taken, appellee joining in error, and upon the joint petition of the parties the case has been advanced. The record is voluminous, but the issues presented are confined to comparatively narrow limits. Appellant is a taxpayer and citizen of Indianapolis, the owner of real estate abutting upon State street, and a resi-

dent thereon. The proceedings preliminary to the adoption of the specifications according to which the improvement is to be made are admittedly regular, and the specifications themselves are not questioned, except as to the provisions contained in that portion thereof which follows:

"(1) Excavation. The roadway shall be excavated to the necessary depth below the established grade of the finished roadway, to provide for the thickness of the pavement, and thoroughly rolled with a heavy steam roller, until the surface of the subgrade is solid and approximately parallel with the proposed surface of the contemplated pavement. Soft and springy places, not affording a firm foundation, shall be dug out and refilled with good sound earth, cinders, gravel, slugs, or stone, as the engineer may direct.

(2) Foundation. On top of this sub-foundation, crushed stone or slag shall be spread to the depth of six inches, which shall then be compressed with a heavy steam roller. If any considerable proportion of the foundation material is larger than three inches, it shall be separated, and the foundation laid in strata, the coarsest pieces being placed at the bottom and the finer at the top. Where suitable gravel (consisting of not more than twenty-five per cent finer than one-fourth inch) can be obtained, it may be used by spreading to a depth of five inches, and after a thorough rolling with a steam roller (wetting the gravel to aid compression when necessary), a layer of crushed stone two inches in thickness shall be placed on the surface and thoroughly rolled to the desired grade. On this foundation, after rolling, shall be spread a heavy coating of Warren's No. 24 Puritan brand hard bituminous cement, for the purpose of firmly binding the foundation together and making it readily unite with the bituminous concrete wearing surface. One gallon of the bituminous cement shall be used to each square yard of surface.

(3) Wearing Surface. On the rough surface of this prepared foundation shall be laid the wearing surface, which shall be composed of carefully selected, sound, hard, crushed stone mixed with bitumen, and laid as hereinafter specified. After heating the stone in a rotary mechanical dryer, to a temperature of about 250 degrees F., it shall be elevated and passed through a rotary screen having six or more sections with varying sized openings, the maximum of which shall be one and

three-fourth-inch openings and the minimum one-tenth-inch in diameter. The several sizes of stone thus separated by the screen sections shall pass into a bin containing six sections or compartments. From this bin the stone shall be drawn into a weigh box resting on a scale having seven beams. The stone from each bin shall be accurately weighed in the proportions which have been previously determined by laboratory tests to give the best results; that is, the most dense mixture of mineral aggregate, and one having inherent stability. From the weigh box each batch of mineral aggregate composed of different sizes, accurately weighed as above, shall pass into a "twin pug," or other approved form of mixer. In this mixer shall be added a sufficient quantity of Warren's Puritan brand No. 21, bituminous waterproof cement, thoroughly to coat all particles of stone and to fill all voids in the mixture. The bituminous cement shall, before mixing with the stone, be heated from 200 to 250 degrees F. The amount used in each batch shall be accurately weighed and used in such proportion as has been previously determined by laboratory tests to give the best results and to fill the voids in the mineral aggregate. The mixing shall be continued until the combination is a uniform bituminous concrete. In this condition it shall be hauled to the street and there spread on the prepared foundation to such depth that, after thorough compression with the steam road roller, it shall have a thickness of two inches. The proportioning of the varying sizes of stone and bituminous cement shall be such that the compressed mixture shall, as closely as possible, have the density of solid stone.

(4) Surface Finish. After rolling the wearing surface, there shall be spread over it a thin coating of Warren's quick-drying bituminous flush coat composition, the purpose of this coating being to completely fill any unevenness or honeycomb which may appear in the surface of the mixture. There shall then be rolled into the surface a thin layer of stone chips, thus presenting a gritty surface, and providing a good footing for horses.

(5) General. Each layer of the work shall be kept as free as possible from dust, dirt, etc., so that it will unite readily with the succeeding layer.

The bituminous composition or cement shall in each case be free from water, petroleum oils, water gas, or process tars, and shall be especially refined with a view to removing the light oils, napthalene, and other crystalline matter, susceptible to atmospheric influences.

If the fine crushed stone used does not provide the best proportions of fine grained particles, such deficiency must be supplied by the use of not to exceed fifteen per cent hydraulic cement, pulverized stone, fine sand, or. gravel.''

Prior to the adoption of the foregoing specifications a written agreement was entered into between the board of public works of the city of Indianapolis and the Warren Brothers' Company, a Massachusetts corporation, as follows:

"Whereas, the Warren Brothers' Company of Boston, Massachusetts, is the owner of all letters patent issued by the United States covering the methods and process for the building and constructing of the patented pavement known as 'Warren's bitulithic pavement,' and also manufactures or controls the manufacture of certain bituminous cements or compounds, known as 'Warren's Puritan brand bituminous cement' and 'Warren's quick-drying flush coat composition,' all of which cements are manufactured for and are expressly adapted for making and laying said bitulithic pavement; and, whereas, said Warren Brothers' Company is desirous of having said forms of pavement come into extensive use, and the city of Indianapolis, Indiana, desires that certain streets, alleys, and public places in said city be paved with said bitulithic pavement; and, whereas, it is necessary in law, and desired by said city, and by said Warren Brothers' Company, that if any streets, alleys, or public places shall be ordered paved by said city with Warren's bitulithic pavement, there shall be such full, competitive bidding for such as is required by law: Now, therefore, upon mutual consideration and the considerations herein expressed, and for the purpose of permitting full, legal, competitive bidding, said Warren Brothers' Company agrees and contracts with said city of Indianapolis as follows:

If said city of Indianapolis shall order and enter into a contract with any contractor to pave any street, alley, or public place in said city, during the years 1905 and 1906, with Warren's bitulithic pavement, according to the standard bitulithic specifications, adopted by the board of public works, said Warren Brothers' Company hereby proposes and agrees to relinquish to said city all of its rights to the use of said patents covering the

methods and processes for making, laying and construct-
ing said bitulithic pavement, for any and all work so
contracted for, giving and granting to said city the
right to permit any contractor to whom such a contract
shall be awarded, and who shall enter into such con-
tract with said city, to use the same upon such terms as
may be prescribed by said city.   And said Warren
Brothers' Company further agrees to furnish and de-
liver to said contractor, as desired, f. o. b. cars, Indian-
apolis, Indiana, the requisite amounts of each grade of
Warren's Puritan brand bituminous cement, and also
the requisite amount and grade of Warren's quick-dry-
ing flush coat composition to do said work according to
said specifications.

Said city, on its part, shall cause any contractor to
whom a contract is so let for paving any street or
streets, alley or alleys, or other public places, with said
Warren's bitulithic pavement, to pay said Warren
Brothers' Company for the use of the patents so trans-
ferred and the material so delivered, a sum equal to
ninety cents per square yard for each and every square
yard of said bitulithic pavement so laid.

Said Warren Brothers' Company further agrees, if it
is desired, to furnish, without extra cost, an expert who
will advise in the laying of said pavement.''

In *Monaghan* v. *City of Indianapolis* (1906), 37 Ind. App.
280, the averment of the complaint was that the city was
proposing to improve a street named by laying there-
1. on Warren's patent bitulithic pavement, and the
holding was that a contract for a patented pave-
ment, where the patentee retains the exclusive right to use
and sell the right to use such pavement to others, cannot
be entered into by the city for the reason that competitive
bidding within the terms and spirit of the statute is thereby
prevented.   It was suggested that the patentee might, by
placing the right to use his invention upon the market,
give to it a general market price so as to obviate the objec-
tion.   This decision is expressly conceded by appellant's
learned counsel to have been a correct one, and it has re-
cently been approved by the supreme court of Illinois.
*Siegel* v. *City of Chicago* (1906), 223 Ill. 428, 79 N. E. 280.

It is averred in the complaint in the case at bar that the specifications aforesaid call for the improvement of said street by laying thereon a certain pavement known as Warren's patent bitulithic pavement, and that Warren Brothers' Company, a corporation, owns letters patent covering the process of constructing such pavement, and has by virtue thereof a complete monopoly thereof. Had the letters patent referred to been introduced in evidence they might have enabled the court more readily to apprehend what was in fact involved in the litigation. If such letters were so introduced, no reference has been made to that part of the record where they appear, and it has not otherwise been discovered.

"The ordinance under which the improvement is sought to be made recites that the patents under which the bitulithic wearing surface is made are owned by the Warren Brothers' Company. The presumption therefore obtains, and the record otherwise indicates, that such company alone has the right to prepare and use, or sell to others to be used, this particular wearing surface, or to grant to others the right to use the process under which it is prepared and laid." *Siegel* v. *City of Chicago, supra.*

Looking to the specifications and contract for evidence upon which to determine the existence of any patent, it is also necessary to look to the same sources in order to learn what the patent is; and upon this subject there is no room for diverse inference in view of all the evidence introduced bearing upon the subject. The contract above set out recites that the Warren Brothers' Company is the owner of letters patent covering the method and process for the building and construction of bitulithic pavement, and that it also manufactures certain bituminous cement for the laying of such pavement. That the patent claimed does not embrace the manufacture of such cements, otherwise clearly appears.

Subdivision three of said specifications calls for a wear-

ing surface composed of carefully-selected, sound, hard, crushed stone mixed with bitumen and laid as hereinafter specified. It is then specified that the stone shall be heated to a temperature of about 250 degrees in a rotary, mechanical dryer, and after heating be elevated and passed through a rotary screen having six or more sections. The several sizes thus separated shall pass into a bin containing six compartments. From this bin the stone shall be drawn into a weigh box, and weighed in proportions which have been previously determined by laboratory tests to give the best results. From the weigh box each batch of mineral aggregate (crushed stone) composed of different sizes shall pass into a mixer in which shall be added a sufficient quantity of Warren's Puritan brand No. 21, *bituminous waterproof cement* thoroughly to coat all particles of stone and to fill all voids in the mixture, it having been first heated. It shall then be hauled to the street (character of vehicle not specified), spread on the foundation, and rolled to a thickness of two inches. This combination of construction by the use of mechanical dryer, rotary screen, bin with six compartments, and weigh box resting upon a scale having seven beams, must be taken as expressing, in a general way, the extent of the monopoly granted by said letters patent.

The word bitulithic is a coined, registered trade-mark. It is used to designate a bituminous, macadam pavement made according to the Warren Brothers' process 2. herein described. It thus appears that no question of the right to make the patented pavement is presented, but merely a question as to the right of the city to require that an unpatented pavement, designated by a coined term, shall be made by the use of a patented 3. process. Appellee's position is that the right to use such process has been released to every one wishing to bid upon the proposed improvement by the contract between the city and the owners of said patent. One step in this process is the use of the brand of cement

named, but the purchase of such cement from the Warren
Brothers' Company is no more a part of the process than
the purchase of the scale of seven beams from said firm is
a part of the process. Both must be used; but from whom
they are purchased is immaterial as far as the patent is
concerned. The contract by which the right to use · said
process is given includes in its terms the purchase of said
cement from the firm named. The price to be paid therefor
is not determined by competition, nor is it fixed by the
market price of a commodity which can be bought in any
open market, but it is arbitrarily fixed by the firm named.
No question of royalty enters into the matter, the cement
not being covered by any patent. How much of the ninety
cents per square yard which is to be paid to said firm is ex-
acted· because of the use of said process, how much because
of the cement furnished, and how much for the services of
the expert, cannot be determined. The Warren's Puritan
brand may be used in the construction of a pavement ex-
actly as any other bituminous cement may be used, upon
condition that it grades up to the standard fixed by the
city. If it is the best brand of bituminous cement its use
will naturally be proportionate to its excellence. The char-
acter of the pavement will depend upon the quality, not
the name of the material put into it. The manufacturers of
the cement have the right to put it upon the market and
give it a market price which will, to some extent, depend
upon the market price of other similar cements. Specifying
a particular brand destroys competition. Section 3519
Burns 1905, Acts 1905, pp. 219, 281, §95, is as follows:
"Whenever such board shall order any work to be done
which, either by order of the board or according to law, is
to be performed by contract, such board shall prepare and
place on file in the office of such department complete draw-
ings and specifications for such work. Thereupon such
board shall cause to be published for two weeks, once each

week, in a newspaper of general circulation published in such city, a notice informing the public and contractors of the general nature of the work and of the fact that the drawings and specifications are on file in such office and calling for sealed proposals for such work, by a day not earlier than ten days after the first of such publications. Such board shall require each bidder to file with such board an affidavit that such bidder has not directly or indirectly entered into any combination, collusion, undertaking or agreement with any other bidder to maintain the price of any work or contract or to prevent any other bidder from bidding or to induce any bidder to refrain from bidding on any contract or work, and that such bid is made without regard or reference to any other bid, and without any agreement, understanding or combination, either directly or indirectly, with any other person with reference to such bidding in any way or manner whatever. And if after any contract has been let by such board it shall be made to appear that the successful bidder has been guilty of any collusion, combination, understanding or agreement, as defined in such affidavit, such bidder shall forfeit such contract and such work shall be relet by such board. The board may, in its discretion, fix a later day for receiving such proposals, provided such date shall be mentioned in each of said notices. Such board shall, if a satisfactory bid be received, let such contract to the lowest and best bidder. The board may by order impose further conditions upon bidders with regard to bond and surety, guaranteeing the good faith and responsibility of such bidders, or insuring the faithful completion of such work according to contract, or for keeping the same in repair for any length of time, or for any other purpose."

If all prospective bidders were, in advance, to agree in writing that the cement to be used in constructing the proposed improvement should be included in their respective

estimates at a fixed price, ninety cents per square yard perhaps, would any one doubt that the subsequent execution of the affidavits by them, in accordance with the requirements of §3519, *supra,* would amount to perjury? It may be said that in the case at bar the contract by which the price of such material is fixed in advance is not a secret one, but that the city is a party to it acting in the capacity of a go-between. The answer is that it is not secrecy, but combination and collusion which the statute is designed to prevent; that an unlawful act does not become lawful because it is boldly done; that the statute is not for the

4. protection of the city council or of the board of works, but for the protection of the lot owners upon whom the burden of the improvement falls, and that in no event does the city council or board of public works have power to waive the statute, their sole duty being to obey it. It follows that the proposed contract is not one which may be lawfully made.

The public policy of the State, expressed with great clearness by the legislature, is to insure competition. The

5. act from which the quotation is made is mandatory and searching to that end. The courts have no option. Statutes must be construed to accord with legislative intent and public policy. The result in the case at bar is to the advantage of the price-paying public both by reducing cost and emphasizing the necessity of open methods in municipal transactions.

The judgment is reversed, and the cause remanded, with instructions to sustain appellant's motion for a new trial, to grant leave to the parties to reform issues, if they desire to do so, and for further consistent proceedings.