(May 5, 1913.)

S. H. McEWEN et al., Respondents, v. CITY OF COEUR D'ALENE, a Municipal Corporation, Appellant, JOHN T. WOOD, Mayor, et al., Respondents, and WARREN CONSTRUCTION COMPANY, a Corporation, Appellant.

[132 Pac. 308.]

MUNICIPAL CORPORATIONS—COUNCIL—POWERS— DISCRETION — PAVING—ORDINANCE—INTENTION—CHARACTER OF IMPROVEMENT—PUBLICATION OF NOTICE—PATENTED PAVEMENT—BIDDING COMPETITIVE—REVENUE.

1. Sec. 2238, Rev. Codes, as amended by Laws of 1911, p. 266, in subd. 5, and paragraph 4 of subd. 6, gives to municipalities and city councils the power to lay out, establish, open and improve streets and alleys and to create special improvement districts, and paragraph 4 of subd. 6 authorizes and empowers the city council to pass two ordinances: First, a resolution or ordinance declaring its intention to make such improvement and stating in such resolution or ordinance the name of the street or alley to be improved, the points between which such improvement is to be made and the general character of the proposed improvement, and the estimate of the cost of the same, and that the cost is to be assessed against the property abutting, fronting, contiguous or tributary, etc.; and, second, an ordinance providing for the establishment of a local improvement district, for the assessment of the abutting, contiguous or tributary lands and lots and the payment of other expenses provided for in the ordinance. Such provisions are intended to give the city council exclusive control of the streets and highways within the city, and the grading, paving and improvement of streets may be directed by the council either upon petition or by affirmative vote of either three-fourths or four-fifths of the city council.

2. Under the provisions of sec. 2238, Rev. Codes, as amended by Laws of 1911, p. 266, the city council is clearly authorized to make specifications and plans for the entire improvement intended and

invite bids and let the contract to the lowest bidder upon the plans and specifications adopted by the council.

3. The resolution or ordinance of intention mentioned in paragraph 4, subd. 6 of sec. 2238, is for the purpose of giving notice to the property owners, who will be subjected to costs and assessments, of the intention of the council, and the property owners are given the right to protest against the proposed intention of the city council, and the council are given power to act on the protest and may accept the same, or, by a vote of three-fourths (or in case there are only five regular members of the city council or trustees then four-fifths) of the members of said council or board of trustees, reject the same, and proceed further with the work.

4. Paragraph 4, subd. 6 of sec. 2238, Rev. Codes, as amended, provides that in the ordinance of intention the city council shall declare its intention to make such improvement and shall state the general character of the proposed improvement. *Held*, that the "general character of the proposed improvement" does not mean that a special, particular, minute or detailed description of the work should be stated, but that a general statement should be made pertaining to a whole class or order; belonging to a whole rather than a part; and that the legislature did not intend that the ordinance of intention should provide in detail the system the council would adopt in providing for and carrying out the improvement, but only to declare a liability upon the part of the city when it directs the paving of a street or some portion of it upon which abuts property held by private parties and subject to taxation or special assessment for the purpose of paying for such improvement, and leaves it optional with the council whether it should adopt any system of universal application or pursue any plan which it may deem best suited to the improvement contemplated at a given time.

5. Sec. 2238, Rev. Codes, as amended, Laws of 1911, p. 266, vests power in the city council to determine the character and kind of pavement and the material to be used, and under such authority the council may adopt bithulithic pavement as a suitable pavement for the improvement described in Ordinances Nos. 344 and 361. Bithulithic pavement is only a part of the cost of the entire improvement. The principle of competition is retained by the agreement filed by the company, and the cost of the patented article is made the same to every bidder, and the complete cost of the improvement will not only be the cost that is paid to the patentee, but will necessarily include additional cost and expenses, such as labor, other materials, tools, machinery, etc., with reference to which there can be the freest competition, and every bidder may compete as a bidder as to the aggregate cost of the improvement.

6.   Under the provisions of paragraph 4 of subd. 6 of sec. 2238, Rev. Codes, as amended, Laws of 1911, p. 266, it is made the duty of the clerk to cause the resolution of intention to be published, and an affidavit of such publication should be filed on or before the time for the filing of the protest. *Held,* the mere failure to file the affidavit of publication is not jurisdictional and in such case, where the publication was actually made, full notice was in fact given as required by the statute and no property owner was in any way injured.

7.   Where the city council of a municipality organized under the laws of this state enacts an annual appropriation bill, and therein provides for public improvements in the sum of $12,500, and a levy is made of 20 mills as authorized by sec. 2238, Rev. Codes, as amended by Laws of 1911, p. 266, for the purpose of raising a general fund for the fiscal year, and such levy, together with the other revenues, such as fines, taxes and licenses provided by law, will produce a sufficient sum to cover all sums which are provided for in the annual appropriation bill, including the $12,500, and such appropriation was intended by the council to be for the purpose of making certain improvements in the paving of cross-sections of streets and other improvements, this court will not hold the ordinance of intention and the ordinance creating the improvement district and the making of assessments, as provided for by sec. 2238 of the Rev. Codes, void.

APPEAL from the District Court of the Eighth Judicial District for the County of Kootenai. Hon. R. N. Dunn, Judge.

An action instituted for the purpose of determining the validity of two ordinances enacted by the city of Coeur d'Alene for public improvements. *Reversed.*

C. H. Potts and James V. Hawkins, for Appellants.

The Idaho statute is materially dissimilar to statutes in other states, in that the legislature has delegated to the city council of this state the exclusive power to, first, pass upon the necessity of a municipal improvement; and, secondly, to determine the character of that improvement. (*Williams v. City of Caldwell,* 19 Ida. 514, 114 Pac. 519.)

If the legislature had intended that the city council should in detail apprise the property owners of the character of the

improvement, it would have said so.   (*In re Dugro*, 50 N. Y. 513.)

In speaking of pavements we do not mean merely the wearing surface, but the base of the pavement, as well.   A pavement base may be composed of concrete having widely different ingredients or of bitumen of vastly different stone. (*Ford v. Great Falls* (Mont.), 127 Pac. 1004.)

The city council in this case found that it had jurisdiction. It had a right to pass on its own jurisdiction.   (Elliott on Roads and Streets, 2d ed., sec. 339.)

Jurisdiction over this important subject has by the legislature been vested in the city officials, and this court is not authorized to review the acts and proceedings of the city council as no right of appeal has been given.

The only ground upon which the court can interfere in such matters is upon the ground of fraud.   (*Bunker v. City of Hutchinson*, 74 Kan. 651, 87 Pac. 884.)

"The mayor and council, so far as appears, exercised an honest discretion, and for what they deemed the best interests of the city."   (*Schefbauer v. Kearney*, 57 N. J. L. 588, 31 Atl. 454; *Elliott v. Minneapolis City*, 59 Minn. 111, 60 N. W. 1081; *Riehl v. City of San Jose*, 101 Cal. 442, 35 Pac. 1013; *Kingsley v. City of Brooklyn*, 5 Abb. N. C. (N. Y.) 1; 20 Am. & Eng. Ency. of Law, 1165; *Parmeter v. Bourne*, 8 Wash. 45, 35 Pac. 586, 757; *Baltimore v. Flack*, 104 Md. 107, 64 Atl. 702.)

The notice informed the property owner that such "profiles," whether profiles or plans and specifications, contained the detail information covering the improvement.   (Elliott on Roads and Streets, 3d ed., sec. 611; *Williams v. City of Caldwell, supra; North Yakima v. Scudder*, 41 Wash. 15, 82 Pac. 1022.)

It being admitted that the bitulithic pavement is patented, we believe a careful review of all the cases of the different states upon this question must inevitably lead to the conclusion that none of the courts now hold, under statutes similar to the statutes of Idaho, that a patented pavement is prohibited.   (2 Elliott on Roads and Streets, 3d ed., sec. 710; *Mon-*

*aghan v. Indianapolis,* 37 Ind. App. 280, 76 N. E. 428; *Tousey v. Indianapolis,* 175 Ind. 295, 94 N. E. 225; *Rose v. Law,* 85 App. Div. 461, 83 N. Y. Supp. 599; *Warren Bros. v. City of New York,* 190 N. Y. 297, 83 N. E. 59; *Ex parte City of Paducah* (Ky.), 89 S. W. 302; *Perine C. & P. Co. v. Quackenbush,* 104 Cal. 684, 38 Pac. 533; *Saunders v. Iowa City,* 134 Iowa, 132, 111 N. W. 529, 9 L. R. A., N. S., 392; *Lacoste v. New Orleans,* 119 La. 469, 44 So. 267; *Bye v. Atlantic City,* 73 N. J. L. 402, 64 Atl. 1056; *Dillingham v. Spartanburg,* 75 S. C. 549, 117 Am. St. 917, 56 S. E. 381, 9 Ann. Cas. 829, 8 L. R. A., N. S., 412; *Hobart v. City of Detroit,* 17 Mich. 246, 97 Am. Dec. 185; *Kansas City Transfer Co. v. Huling,* 22 Mo. App. 655; *State v. Shawnee County,* 57 Kan. 267, 45 Pac. 616; *Holmes v. Detroit,* 120 Mich. 226, 77 Am. St. 587, 79 N. W. 200, 45 L. R. A. 121; *Newark v. Bonnell,* 57 N. J. L. 424, 51 Am. St. 609, 31 Atl. 408; *Ryan v. Paterson,* 66 N. J. L. 533, 49 Atl. 587; *Field v. Barber,* 117 Fed. 925; *Swift v. St. Louis,* 180 Mo. 80, 79 S. W. 172.)

There is no real proof that this affidavit was not filed at the time required by law, and the presumption is that it was filed until the contrary is clearly established. But whether it was in fact filed is immaterial, as the real question is: Was the ordinance published? If it was in fact published, that is sufficient. (*Williams v. City of Caldwell, supra.*) The city of Coeur d'Alene has sufficient income and revenue provided to pay for the city's portion of the cost of the improvement. (*Feil v. City of Coeur d'Alene,* 23 Ida. 32, 129 Pac. 643.)

The passage of the ordinance creating the improvement district constituted a decision against the protest, even if it had been signed by a sufficient number of property owners to have required a hearing by the council. (*Harney v. Heller,* 47 Cal. 15; *Pacific Paving Co. v. Mowbray,* 127 Cal. 1, 59 Pac. 205.)

Elder & Elder and J. L. McClear, for Respondents.

The description of the general character of the proposed improvement as contained in Ordinance No. 344 is not sufficient to convey the notice which the statute intends the prop-

erty owners affected thereby should receive. (1 Abbott on Mun. Corp., p. 874; *Lambert v. Cummings,* 2 Cal. App. 642, 84 Pac. 266; *Bay Rock Co. v. Bell,* 133 Cal. 150, 65 Pac. 299; *Fay v. Reed,* 128 Cal. 359, 60 Pac. 927.)

The ordinance is void, for the reason that it does not describe the general character of the drainage or sewer system. (*Hawthorne v. City of Portland,* 13 Or. 271, 10 Pac. 344; *Ladd v. Spencer,* 23 Or. 193, 31 Pac. 474.)

The following cases hold that the descriptions contained in ordinances in statutes similar to the Idaho statute were not sufficiently definite to sustain an assessment. (*St. John v. East St. Louis,* 136 Ill. 207, 27 N. E. 543; *Hull v. Chicago,* 156 Ill. 381, 40 N. E. 937; *City of Connersville v. Merrill,* 14 Ind. 303, 42 N. E. 1112; *Otis v. Chicago,* 161 Ill. 199, 43 N. E. 715.)

The construction which the appellants attempt to place on the word "profile" as used in ordinance No. 344 is absurd and without reason. Said word, as used in its ordinary meaning, is not synonymous with the terms "plans and specifications," and is never used to convey the same meaning as that term. (*Williams v. Caldwell,* 19 Ida. 514, 114 Pac. 519.)

A patented material which can be obtained from but one person, firm or corporation cannot, in this state, be specified by the city council as the only class or kind of pavement which will be considered in letting contracts for the laying of pavement. Not, however, because the article is patented, but for the reason that if it is so prescribed, competition in the laying of the pavement must be, and is, entirely absent. (*Siegel v. Chicago,* 223 Ill. 428, 79 N. E. 280, 7 Ann. Cas. 104; *Fishburn v. Chicago,* 171 Ill. 338, 63 Am. St. 236, 49 N. E. 532, 39 L. R. A. 482; 2 Beach on the Modern Law of Contracts, sec. 1108; *Monaghan v. Indianapolis* (Ind. App.), 75 N. E. 33; *State v. Elizabeth,* 35 N. J. L. 351; *State v. Jersey City,* 35 N. J. L. 404.)

Where a city is required by law to let every contract for street improvement to the lowest and best bidder, an ordinance seeking bids for street paving which restricts the material to be used to a patented article controlled by one person is void. (*Fineran v. Central Bitulithic Paving Co.,* 116 Ky.

495, 76 S. W. 415, 3 Ann. Cas. 741; *Nicholson Pavement Co. v. Painter,* 35 Cal. 699; 28 Cyc. 1026.)

STEWART, J.—The appellants commenced this action against the city of Coeur d'Alene, a municipal corporation, and its mayor and council and the Warren Construction Company, a corporation, for the purpose of securing an injunction from laying pavement on Fourth street, in the city of Coeur d'Alene, under a contract entered into between the city of Coeur d'Alene and the Warren Construction Company, and for the purpose of having determined whether Ordinance No. 344 of the ordinances of Coeur d'Alene city, passed and approved by the city of Coeur d'Alene on March 2, 1911, and also Ordinance No. 361 of the ordinances of said city, passed and approved by the city of Coeur d'Alene on September 15, 1911, are valid.

This case was tried before the court and judgment was entered granting a permanent injunction and holding that Ordinances 344 and 361 of the city of Coeur d'Alene are void, and of no force or effect. From this judgment this appeal is taken.

The objections to these two ordinances are set out specifically in appellants' brief, and are accepted as sufficient to present the questions in issue in this case, and are accepted by respondents as properly presenting the issues in the case: First, is the description of the general character of the proposed improvement as contained in Ordinance No. 344 sufficient to convey the notice which the statute intends the property owners affected thereby should receive? Sec. 2 of Ordinance No. 344 reads as follows: "That the character of the proposed improvements on the said portion of the above named street consists of paving the said portion of the said street with *suitable pavements,* constructing a concrete curb along the side of the said portion of the said street where a proper concrete curb is not already constructed, extending the concrete curbs which are already constructed along the said portion of the said street downward where they are found not to be deep enough for the purpose of paving, constructing on

said portion of said street a sufficient number of catch basins connected with proper tile and pipe drains to complete the drainage sewer system for the said portion of said street, and said paving and curbing to be laid on grades established on said portion of said street.''

It will be observed from said ordinance that the character of improvement is designated as ''suitable pavements,'' a concrete curb and a drainage or sewer system. It will be seen that the description does not specify the name or kind of pavement, except that such shall be suitable, and the curbing is not described as to its size or extent or the materials to be used, neither are the tile and pipe drains in any way specified by name or description or material, and the same is true as to the drainage sewer and the catch basins.

Counsel for appellants contend that sec. 2 of Ordinance 344 states all that is required under the provisions of sec. 2238, Rev. Codes, as amended by chap. 81, Sess. Laws 1911, p. 266. While counsel for respondents contend that the description contained in sec. 2 is void, for the reason that it does not describe the general character of the drainage sewer system as required by sec. 2238, Rev. Codes, as amended.

Paragrahp 4 of subd. 6 of the amended sec. 2238 provides: ''The city council or trustees shall, before or during the .... *paving, or other improvement of any street or alley,* the cost of which is to be levied and assessed upon the property benefited, first pass at a regular or special meeting, a resolution or ordinance declaring its intention to make such improvement, and stating in such resolution or ordinance the name of the street or alley to be improved, the points between which said improvement is to be made, the general character of the proposed improvement, and the estimate of the cost of the same, etc.''

The same paragraph also provides for protests against the proposed improvement by owners of more than two-thirds of the front feet of lots and lands abutting on such proposed improvement and included in the assessment district, and upon such protest being filed, the council shall not proceed unless three-fourths (or in case there are only five regular members

of the council or trustees, then four-fifths) of the members of said council or board of trustees shall vote to proceed with such work, and if no protest is filed, or if such protest is filed and three-fourths of the council or trustees shall vote to proceed with such work, the council or trustees shall, at the next regular meeting, proceed to consider the same and shall then, or at a subsequent time, proceed to enact an ordinance for such improvement, and by such ordinance a local improvement district shall be established, which shall include all the property fronting or abutting on, contiguous or tributary to the street to be improved, and such ordinance shall provide that such improvements shall be made. Then follow the provisions as to the expenses and the taxing and assessment of property, etc.

Construing this subdivision as a whole, it is apparent that the legislature intended that two ordinances should be passed by the city council. The first should provide in part for the intention to make such improvement and the general character of the proposed improvement. The second ordinance should provide for the establishment of a local improvement district and the expense and assessment and the creating of liens on the property and the foreclosure of the same.

Turning, now, to Ordinance No. 361, in sec. 2 it is provided that the general character of said proposed improvements in said District No. 19 shall be as follows, to wit: "The improvements shall consist of paving it with a suitable pavement and curbing it with a concrete curb, where curbs are not already constructed along said Fourth street, and extending the curbs downward which are already in, where they are found to be not deep enough, and placing on said Fourth street a sufficient number of catch basins to complete the drainage sewer system of said Fourth street, from the north side of Coeur d'Alene Avenue to the south side of Harrison street; the said improvements to be made on said street at a grade to conform to the grades heretofore established by city ordinances and according to the *profiles* thereof, which are on file in the office of the city engineer, to be made to conform to the plans and specifications adopted and approved by the city council and

the city ordinances relating thereto.'' Ordinance No. 344, which declares the city's intention to make the improvement, states the general character of the proposed improvement in accordance with the requirements of sec. 2238, as amended, and Ordinance No. 361 fully and completely complies with the requirements of subd. 6 of sec. 2238 as amended, and states the general character of the proposed improvement.

It no doubt was the intention of the legislature in enacting chap. 81, Laws of 1911, p. 266, that after the ordinance of intention had been enacted, stating that it was the intention of the city to grade and pave a street or alley, and to levy an assessment on the property benefited, and that the character of the proposed improvement was a ''suitable pavement'' and concrete curbs and catch basins and tile and pipe drains and a sewer system, the city council should pass an ordinance establishing the improvement district, and in such latter ordinance the general character of the proposed improvement should be stated and the more specific character of the proposed improvement be given. The two ordinances should be construed in connection with par. 4, subd. 6 and subd. 5 of sec. 2238. The legislature intended to confer discretion upon the city council, in subd. 5, to construct ''sidewalks, curb, plank, pave, gravel, macadamize, gutter, grade or sprinkle any highway, street or alley therein, in whole or in part, and levy a special tax on the lots and parcels of land fronting, contiguous or tributary on such highway, street or alley, to pay the expense thereof. But unless a majority of the resident owners of the property subject to assessment for such improvement petition the council or trustees to make the same, such improvement shall not be made unless three-fourths (or in case there are only five members of the council or board of trustees then four-fifths) of all the members of such council or board of trustees shall, by an affirmative vote, at a regular meeting, assent to and order the same.''

It will thus be seen by subd. 5 of sec. 2238 that power is granted to the city council to make improvements either by petition or by an affirmative vote of either three-fourths or four-fifths of the city council, and that this power is vested

upon the passage of the ordinance of intention and the establishing of a local improvement district under the provisions of sec. 2238, Rev. Codes. Sec. 2238 makes no provision or requirement that either the ordinance of intention or the ordinance establishing the local improvement district shall state or contain the name of the pavement or the material out of which the paving is manufactured or the size or dimensions of the gutters or the material for the drainage sewer system or the curbing and its dimensions or the material used. These are matters over which the city council has control, and in the council the power is vested by subd. 6 of sec. 2238 to determine the name and character of the material to be used and the general character of the improvement to be made, such as the character of the paving, the dimensions of the gutters and the material used for the drainage system and the curbing and its dimensions and the material used. The council is clearly authorized to make specifications and plans for the entire improvement and to invite bids and to let the contract to the lowest bidder upon the plans and specifications adopted by the council. This is clearly indicated by par. 4, subd. 6 of sec. 2238, wherein it is provided: "The city council or trustees shall, *before or during the grading, paving or other improvement* of any street or alley .... pass at a regular or special meeting a resolution or ordinance declaring its intention to make such improvement, and stating in such resolution or ordinance .... the general character of the proposed improvement. ..... " The resolution or ordinance shall declare the intention of the council, and this is for the purpose of giving notice to the property owners, who will be subjected to costs and assessment, of the intention of the council, and such property owners are given the right to protest against the proposed intention of the city council; and the council is given power to act on the protest, if the necessary two-thirds of the owners of the front feet of lots and lands abutting on such proposed improvement included in the assessment district have filed protest. In the present case it appears from the record that two-thirds of the owners of the front feet of lots and lands did not file protest. The

council by the vote required under said subdivision passed an order and decided to proceed with such work. This action of the council was clearly authorized by said subdivision.

There is no ambiguity in the language of the statute; it is plain, and no technical rules are required in order to interpret the intention of the legislature. The language used is general, and this court is not inclined to restrict the meaning or interpret in the statute requirements which were not intended by the legislative authority. If the legislature intended that the city council in such resolution or ordinance should in detail state the name of the pavement and the material to be used and the details of the curbing and the material used and the kind of sewer-pipes, etc., the legislature would have said so.

By the use of the words "general character," it was not intended that a special, particular, minute or detailed description of the work to be done should be stated. "General" means pertaining to a whole class or order; belonging to a whole rather than a part; not restrained or limited to a precise or detailed import; and character means account, description. (*Joost v. Sullivan,* 111 Cal. 286, 43 Pac. 896.) The Standard Dictionary defines "general," as used in subd. 4, as follows: "2. Pertaining to the majority; common to the greater number but not to all; true of a large number or proportion; wide-spread or prevalent, as distinguished from universal. 3. Large or unlimited in scope, meaning or contents; not restricted in application or jurisdiction; opposed to particular or special; hence, indefinite or vague. 4. Usual or customary; common. 5. Viewed altogether or as a whole; taken all in all; as, one's general behavior. 6. Relating to public or daily affairs; common and vulgar." Under this definition it would seem that No. 2 specially applies to the use made of the word in subd. 4; that general does not mean a special, particular, minute or detailed description of the work to be done.

It will be seen that in the ordinance reference is made to the *profiles* on file in the office of the city engineer for a more minute description of the proposed improvement. The

word "profile" no doubt was not used by the city council
in a strict sense, but it was meant that a minute description
was on file in the office of the city engineer, and this court
will presume that the data required was on file in the city
engineer's office where any property owner affected by the
improvement could have ascertained the information he de-
sired, and that profile meant that the plans and specifications
contained the detailed information covering the improvement.
(*Williams v. City of Caldwell*, 19 Ida. 514, 114 Pac. 519;
*North Yakima v. Scudder*, 41 Wash. 15, 82 Pac. 1022; Elliott
on Roads and Streets, 3d ed., sec. 611.)

In the case of *Ford v. City of Great Falls* (Mont.), 127
Pac. 1004, the supreme court of Montana had under consid-
eration the statutes of that state and city ordinances passed
by the city of Great Falls in pursuance of the statutory pro-
visions, and it appears from that opinion that under sec. 3369
of the Rev. Codes of that state the city or town council is
authorized to provide by ordinance a system for doing any
and all work in or upon streets, highways or public places
of the city or town, and for making thereon street improve-
ments and repairs, and for doing any and all work authorized
by the act, and for the payment of costs and expenses thereof;
and sec. 3370 provides that the resolution shall designate the
boundaries of the district to be affected or benefited and that
notice shall be given by publication in a newspaper or by
posting or by service on the owners or agents of the property,
and that the notice shall prescribe the improvement, state the
estimated cost, and designate a time for a hearing. The court
says: "The procedure pursued by the council with reference
to the improvement in question appears to have been in strict
conformity with these provisions, and it acquired jurisdiction
to proceed unless it is incumbent upon every city or town
council, before ordering any special improvement 'to provide
by ordinance a system for doing any or all work upon the
streets, highways, etc. . . . . and for the payment of the cost
and expense thereof.' " The court observed in that opinion
that the council is the governing body of the municipality;
that it is given exclusive control of streets and highways.

That is also true in this state.   Subd. 5 of sec. 2238, Rev. Codes, grants to cities and villages the exclusive control of streets and highways.   The supreme court of Montana in the Ford case, in construing sec. 3369, says: ''It is not to be presumed that . . . . the legislature intended to impose as a condition that any exercise of it must be in accordance with any carefully prepared system previously adopted.   On the contrary, it seems apparent that the intention was to leave it optional with the council whether it shall adopt any definite system of uniform application, or pursue any plan which it may deem best suited to effect the improvement contemplated at a given time.   In other words, it is left free to provide that all work shall be let by contract or to elect to do it itself through a committee or board of public works, or a designated officer, or to pursue that plan which best meets the exigencies of a particular case.   The language of the section is permissive, not mandatory, except as to the provisions for notice and a hearing; and, since no reason is suggested or apparent why it should be held mandatory, we do not think we are required to declare it to be so.   It is to be observed, too, that the purpose of Ordinance 362 is not to provide a system for doing any work, but to declare a liability on the part of the city whenever it directs the paving of a street or some part of it upon which abuts property held by public ownership. . . . . If this purpose is legitimate, the ordinance cannot be held to be void, because it does not provide a system to be pursued by the city authorities in improving the streets; nor for the same reason is the resolution void.''

That case seems to be very much in point in the present case, and by the language used in subd. 4 it would seem that it was not intended by the legislature that the ordinance of intention should provide in detail the system which the council would adopt in providing for and carrying out the improvement, but only to declare a liability upon the part of the city whenever it directs the paving of a street or some part of it upon which abuts property held by private parties, subject to taxation or special assessment for the purpose of paying for such improvement.   On the contrary, the statute seems clear

that it was the intent of the legislature to leave it optional with the council whether it should adopt any definite system of universal application, or pursue any plan which it may deem best suited to the improvement contemplated at a given time.

Counsel for respondents cite several cases from California and Oregon in support of the contention that the words "general character," as used in subd. 4, mean a description of the proposed pavement. The cases so cited are based upon statutes of those states which are not similar to the statutes of this state, and the distinction is as follows: The legislature of this state has delegated to the city council, created under the laws of the state, the exclusive power: 1st. To pass an ordinance of intention to make such improvement, containing a statement therein of the general character of the proposed improvement, and the other provisions prescribed by sec. 2238; 2d. To provide by ordinance that a local improvement district shall be established, and the other provisions required under subd. 4; 3d. To adopt a definite system of universal application, and plans and specifications best suited to effect the improvement contemplated, and to make a contract, after due notice, with the lowest bidder. While in the decisions stated from California and Oregon the statutes provide that the property owners affected by a municipal improvement can absolutely prevent the city council from proceeding, if they so elect, and for this reason the courts have held that the property owner is entitled in the original resolution or ordinance of intention to have a designation in detail of the character of the proposed improvement.

In the brief of respondent a statement is made that there is no provision for the construction and payment of the drainage system and catch basins which are to be constructed. This is answered by the contract itself, and it may be observed that such improvement is a part of the paving of the streets and is paid in the same manner as the paving.

We hold, therefore, that Ordinances 344 and 361 are not void, for the reason that they do not describe the general character of the pavement or the drainage or sewer system.

Second, has a municipal corporation the right to contract for a patented article under the statute? It is the contention of the respondents in this case that a patented material which can be obtained from but one person, firm or corporation, cannot in this state be specified by the city council as the only class or kind of pavement which should be considered in letting contracts for the laying of pavements, for the reason that if it is so prescribed competition in the laying of the pavement must be, and is, entirely absent.

It is admitted in this case that bithulithic is a patented pavement. It is also shown in this case that Warren Brothers Company submitted to the mayor and city council of Coeur d'Alene an agreement dated July 6, 1912, wherein it was agreed by Warren Bros. Company, patentees of the bithulithic pavement, as follows: "Inasmuch as the construction of said pavement requires the use of certain patented processes and compounds; and inasmuch as competitive bidding in the letting of contracts for street improvements is deemed advisable, in order to provide for such competitive bidding, and at the same time secure the adoption of the bithulithic pavement as the kind of pavement to be constructed in such streets as may hereafter be determined; the undersigned, Warren Brothers Company, as owner of all patents and processes covering the laying of said bithulithic pavement, hereby proposes and agrees, for the consideration hereinafter named, with the city of Coeur d'Alene or any bidder, to whom a contract may be awarded to pave any street or streets in the city of Coeur d'Alene with the bithulithic pavement, at any time within one year from this date, or at any time thereafter, until this proposition is formally withdrawn, and who shall enter into a contract with such surety or sureties as may be required by said city of Coeur d'Alene to furnish, for the performing of any such contract and for making any repairs which may become necessary during the period of any maintenance guarantee provided for in such contract, the following materials ready for use, service and use of machines, coupled with a free license to use any or all patents, trademarks, or trade names now owned or which may here-

after be owned by Warren Brothers Company, necessary to lay said pavement:

"1. The necessary roadway mixture for the wearing surface having a thickness of two inches after compression, prepared under the patented process of Warren Brothers Company and delivered hot in the wagons of the city or contractor at the bithulithic mixing plant located in the city of Coeur d'Alene; said plant to be located within three miles of the work to be performed.

"2. The right to use any and all patents, trademarks or trade names now owned or which may hereafter be owned or controlled by Warren Brothers Company, which are necessary to be used in the laying of such pavement.

"3. The bituminous flush coating cement and stone chips necessary for coating the wearing surface, including necessary bituminous cement for pouring base, delivered on wagons of the city or contractor at the bithulithic mixing plant located as above.

"4. The license to use the patented flushcoat bitumen and stone spreading machines, which machines will be furnished by Warren Brothers.

"5. An expert, who will give proper advice as to the building of such pavement, will be furnished to the city or contractor, at the expense of Warren Brothers Company.

"6. Two daily examinations of the mixture as delivered on the street will be made at the laboratory of Warren Brothers Company, to determine if uniformity has been accomplished in the mixture and construction. . . . . .

"The price at which this service is offered to any and all contractors who make a bid of the bithulithic pavement, in the city of Coeur d'Alene, State of Idaho, is One Dollar and Forty-five cents per square yard of finished pavement, at which price it is also agreed to furnish the materials, F. O. B. Coeur d'Alene, in barrels for reheating, and the service for making all repairs, if any, which may be necessary for the wearing surface during the life of said patents.

"The acceptance of bids by your city and the letting of a contract for the same shall be deemed by Warren Brothers

Company to be an acceptance of the proposal by the city and by the contractor to whom such contract shall be awarded, and are all that shall be necessary to bind Warren Brothers Company to this agreement."

The record also shows that a contract was awarded by the city of Coeur d'Alene to the Warren Construction Company, wherein the Warren Construction Company was awarded the contract to pave with bithulithic pavement in Improvement District No. 19.

In the case of *Saunders v. Iowa City*, 134 Iowa, 132, 111 N. W. 529, 9 L. R. A., N. S., 392, it is held that where a contract for the construction of pavement was let to the lowest bidder, the fact that the city required the use of certain patented pavement did not restrict a competition in violation of the statute. The court said: "The Warren Bros. Company agreed to furnish its patented material at a flat price to all bidders. The proposition was filed with the city council, and the price named. Bidders knew just what they would have to pay for the material, just as they might have known what they would have to pay for brick, sand and cement had the pavement been made of brick. We have already set out the proposition, and need not repeat it here. Under the great weight of authority the statute was sufficiently complied with, and was competitive bidding. (See *Monaghan v. City of Indianapolis*, 37 Ind. App. 280, 76 N. E. 425; *Bye v. Atlantic City*, 73 N. J. L 402, 64 Atl. 1056; *Hastings v. Columbus*, 42 Ohio St. 585, *City of Baltimore v. Flack*, 104 Md. 107, 64 Atl. 702, *State v. Board*, 57 Kan. 267, 45 Pac. 616; *Bunker v. City of Hutchinson*, 74 Kan. 651, 87 Pac. 884.) "

In the case of *Lacoste v. New Orleans*, 119 La. 469, 44 So. 267, in referring to the case of *Seibert v. City of Indianapolis*, 40 Ind. App. 296, 81 N. E. 99, the court says: "The argument of the court in that case is that there would be no competition in the contract because the cements would have to be bought, not at a price fixed by competition on the open market, but at a price fixed by the patentee. The fallacy of this argument lies in the assumption, which it gratuitously makes, that the statute requires that there shall be competi-

tion in the purchase of the materials, whereas the statute only requires that there shall be competition in the award of the contract. There is competition in the award of a contract if the award is made after due advertisement and with a margin of profit the same for all.''

In the case of *Reed v. Rockliff-Gibson Company*, 25 Okl. 633, 138 Am. St. 937, 107 Pac. 168, the supreme court of Oklahoma held that where the city authorities passed a resolution stating that the materials to be used in a certain street improvement should be Hassam pavement, a patented material or process, and the notice to contractors contains the statement that the owner of the patents covering the process will furnish to any bidder who may be awarded the contract the right to lay the pavement and furnish to such bidder expert advice as to laying thereof, does not infringe the statute which provided that the contract must be let to the lowest bidder. In that case there was only one kind of pavement, Hassam pavement, specified. In the case now under consideration the contract specifies bithulithic pavement.

The most recent case upon this subject is that of *Ford v. City of Great Falls*, heretofore cited (Mont.), 127 Pac. 1004. In that case the question was presented that the proceedings of the council were void, because by its resolution and its notice calling for bids it had specifically required the use of bithulithic pavement, and thus eliminated competition in bidding. The court observed: ''The power to let is lodged exclusively in the council, under the limitations prescribed by the statute. If the statute granting the power also prescribes the procedure which must be pursued, this procedure is the exclusive guide. . . . . The provision requiring competitive bidding is designed to prevent favoritism and to secure to the public the best possible return for the expenditure of the funds which the property owners are required to furnish through the payment of taxes and assessments. But the benefits to be anticipated from the letting of contracts by this mode will vary according to circumstances. The article or material desired may be of such a character that the competitors will or may be numerous. In other cases

the persons who can compete will be few because the article or material is of such a character or the source of supply so limited, that only a few persons can furnish it. It may happen that there are only one or two bidders. The principle of competition would nevertheless still be retained, and a contract let under these circumstances would not necessarily be objectionable on the ground of illegality. The security of the public against favoritism and extravagance would still rest in the power of the council to reject all bids. It may happen in a given case, as here, that because the necessary article is patented, or because the source of supply is in the control of a single person, there can be no competition as to it. One who has a patented invention has the exclusive right to make and sell it. He can fix the price at which it must be sold and can control the supply. He therefore has a monopoly—one granted to him by the law, it is true, but still a monopoly. None the less has he also a monopoly who owns the only gravel or sand pit or stone quarry from which the city may obtain material for construction purposes. It is thus apparent that in many, perhaps most, cases the margin for competition is practically unlimited, while in others it is comparatively narrow. In case of a patent invention, or where the source of supply is controlled by a single person, the margin disappears altogether as to that particular article.''

In the above case, after discussing the question further, and making different citations, the court said: ''We think the facts in this case make it apparent that, except as to the patented processes and compounds of the Warren Bros. Company, the cost of which is only a part of the gross cost of the improvement, the principle of competition has been retained. By the agreement filed by the company with the council, the cost of the patent is made the same to every bidder. Yet there is a wide margin left within which fall the labor, other materials, tools, machinery, etc., necessary to complete the improvement, with reference to which there can be the freest competition.''

The rule announced above, we think, is a correct statement of the law governing the case now under consideration. Power was vested in the city council under chap. 81, Laws of 1911, p. 266, to determine the character and kind of pavement, and the material to be used, and under this authority the council may adopt bithulithic pavement as a suitable pavement for the improvement, as designated in ordinances 344 and 361. The bithulithic pavement is only a part of the cost of the entire improvement; the principle of competition is retained by the agreement filed by the company wherein the cost of the patented article is made the same to every bidder. The complete cost of the improvement will not only be the cost that is paid to the patentee, but will necessarily include additional cost and expenses such as labor, other materials, tools, machinery, etc., with reference to which there can be the freest competition, and every bidder may compete as a bidder as to the aggregate cost of the improvement. This rule has been recognized by the courts in all cases where the facts were the same as those in this case, which are collated and cited in the case of *Ford v. City of Great Falls, supra.*

There are cases where the courts have held that a patented material which can be obtained from but one person, firm or corporation cannot be specified by the city council as the only class or kind of pavement which will be considered in letting contracts for the laying of pavements, because by so doing competitive bidding is prevented; such as *Fishburn v. City of Chicago,* 171 Ill. 338, 63 Am. St. 236, 49 N. E. 532, 39 L. R. A. 482; *State v. Elizabeth,* 35 N. J. L. 351; *Fineran v. Central Bithulithic Paving Co.,* 116 Ky. 495, 76 S. W. 415, 3 Ann. Cas. 741; *Nicholson Pavement Co. v. Painter,* 35 Cal. 699. These cases, however, are not applicable to the statute of this state, as we have heretofore discussed, and we think the correct rule is announced by the supreme court in the cases of *Saunders v. Iowa City, La Coste v. New Orleans, Reed v. Rockliff-Gibson Co.* and *Ford v. City of Great Falls, supra.*

It clearly appears in this case that the patented invention for the manufacture and use of the bithulithic process was issued to Warren Brothers Co., and that such patentee agreed

to allow the use of the patented mode and material at a specified price per square yard by anyone bidding upon the contract. The proposal for bids afforded competition by reason of the fact that many things were to be done in connection with the contract and its fulfillment in addition to the furnishing of the bithulithic process. There is no evidence that the Warren Brothers Company were bidders for such contract, or that the Warren Construction Company had any interest whatever in the patent of the bithulithic process, and it not being shown that Warren Brothers Company, the owner of the patent process, had any interest whatever in the bid made by the Warren Construction Company, which was accepted by the city, this court is not justified in concluding that competitive bidding was prevented in any way whatever.

There can be no question but that the authorities relied upon and cited by the respondents are not applicable to the facts in this case and the statute which we have heretofore discussed. It would be a very different question, and one which seems to be recognized in the authorities above cited in support of the position contended for in this case by the respondents, if the Warren Brothers Company, the patentee of the bithulithic process, were a bidder, but the facts do not support such contention. In this case the Warren Brothers Company, the patentee, filed an agreement to allow the use of the patented process at a specified price by anyone bidding upon the proposal and who made a contract with the city of Cocur d'Alene for the construction of bithulithic pavement. The only rule to be adopted by this court under the facts is the rule heretofore announced and approved in the cases heretofore cited.

Third. The next contention on the part of the appellants is: Was proof of the publication of the initial ordinance properly made?

It is provided in par. 4 of subd. 6 of sec. 2238, chap. 81, Laws of 1911, that it is the duty of the clerk to cause such resolution of intention to be published in the official newspaper of the city in at least two consecutive issues before

the time fixed in such resolution for filing such protest, and that affidavit of such publication shall be filed on or before the time for such filing of protest. The evidence in this case shows that the ordinance was in fact published in full in two issues of the paper, to wit, March 18th and March 25th, 1911, and the publisher of the newspaper testifies that it was the custom of the paper to file proof of publication of ordinances as soon as they were published. It appears also that the city clerk could not find this affidavit of publication, and as there was a change in the administration, the incoming clerk seems not to have looked particularly for the affidavit; but there is no evidence that the affidavit was not filed. Under these circumstances the court will presume that the affidavit was filed, inasmuch as the evidence shows that the publication was made and that it was the custom of the paper to file the same. But, be that as it may, the mere failure to file the affidavit of publication is not jurisdictional, and in such case where the publication was actually made, full notice was in fact given as required by the statute, and no property owner was in any way injured. In speaking of this subject, this court, in *Williams v. City of Caldwell*, 19 Ida. 514, 114 Pac. 519, said: "It must be conceded that the affidavit should have been filed as required by the statute, but the mere filing of the affidavit is not the jurisdictional fact. The actual existence of the fact required to be shown by the affidavit is the thing which confers the jurisdiction. The affidavit is merely the proof that the jurisdictional fact exists, but the failure to make the proof does not do away with the facts which the proof would show. . . . . It is clear to us that the failure to make the affidavit did not oust the council of jurisdiction."

Fourth. The next question urged for reversal is: Has the city of Coeur d'Alene sufficient income and revenue provided to pay for the city's portion of the cost of the improvement?

Sec. 3, art. 8 of the constitution of this state provides: "No county, city, town, . . . . shall incur any indebtedness, or liability in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such

year, without the assent of two-thirds of the qualified electors thereof, voting at an election to be held for that purpose, nor unless, before or at the time of incurring such indebtedness, provision shall be made for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof, within twenty years from the time of contracting the same. Any indebtedness or liability incurred contrary to this provision shall be void: Provided, That this section shall not be construed to apply to the ordinary and necessary expenses authorized by the general laws of the state.''

Under this contention it is urged by respondents that under the 3d subdivision of sec. 2238 of chap. 81 of the Laws of 1911, the city council was not authorized to levy or appropriate in excess of two mills for the purpose of paying the city's portion of said improvement. Such section says: ''Establish, lay out, alter, open any streets or alleys, and improve, repair, light, grade or sprinkle, drain the same . . . . establish grades and construct bridges, cross walks, culverts and sewers thereon and repair and maintain the same; . . . . and defray the costs and expenses of the same out of the general fund of such city or village, not exceeding two mills of the levy for general purposes, or defray the costs and expenses of the same by a special assessment in accordance with the provisions of the fifth and sixth subdivisions of this section.''

The trial court in his findings found that the city council of Coeur d'Alene appropriated the sum of ''$52,165.10 for all purposes for the fiscal year.''

Under the provisions of subd. 3 of sec. 2238, the city council is limited in the amount that may be expended for the improvements mentioned in said subdivision to two mills of the levy made by the city council of 20 mills on the dollar. The trial court finds that the total valuation of the city is $1,389,976, and the amount that could be raised for general revenue purposes would be $27,799.

It also appears that the city council by proper resolution passed an annual appropriation bill for the city of Coeur d'Alene on the 1st day of July, 1912, and certified the levy made to the county auditor as follows:

| "Purposes. | Amount. | Rate in Mills. | Produces. |
|---|---|---|---|
| Street Lighting ................. | $4680.00 | 3.36 | $4670.40 |
| School Judgment ................ | 3008.10 | 2.16 | 3002.40 |
| Imp. Bond Interest............. | 1620.00 | 1.16 | 1612.40 |
| City Hall Interest ............. | 2400.00 | 1.72 | 2390.80 |
| Public Library ................ | 1390.00 | 1.00 | 1390.00 |
| Totals .......................... | $14445.60 | 9.40 | $14400.40 |
| | 14400.40 | | |
| | 45.20 | | |

Levy for general revenue purposes............20.00 mills  27800.00

Total levy for all purposes (mills).............29.40      $42200.40

"Above levies figured on a basis of $1,390,000 taxable valuation."

The council in the annual appropriation bill made an appropriation for salaries of $14,367, for public improvements $12,500, for current expenses $9,250, making a total of $36,117. The council intended that this sum should be paid from the general levy of twenty mills and such other revenues as were contemplated by the city during the year. The trial court finds that the twenty mills levy will produce $27,800, and that there will be received by the city for the fiscal year beginning the second Tuesday in May, 1912, in addition to the sum raised by the twenty mills general levy, fines, taxes and licenses increasing said general fund to the total of $35,799. Deducting this sum from the total amount appropriated for salaries, public improvements and current expenses would leave a deficiency of $318.

The evidence in this case is very uncertain and indefinite as to the exact revenue that will arise from fines, taxes and licenses. There is evidence that such sum would not be less than $6,000 nor more than $10,000. Neither is the evidence certain or definite as to the exact amount of money that will be necessary for public improvements or for current expenses, and because of the uncertainty of such prospective expenses,

and because of the uncertainty in the prospective revenues from fines, taxes and licenses, the exact revenue and expenses cannot be ascertained; but taking the figures as above stated, the revenue seems practically to be sufficient to meet all of the contemplated debts of the city during the fiscal year beginning the second Tuesday of May, 1912. The deficit is so slight that the city council no doubt will by careful administration of the expenditures of the city bring them within the revenue fixed by the levy made. We do not think that this difference should render the ordinances now under consideration void. The council seem to have acted in perfect good faith, and have intended at least to bring the expenses within the revenue arising from the levy made, and we think that this can be done.

For the reasons herein given we find: 1. That Ordinance No. 344, approved by the city of Coeur d'Alene on the 2d day of March, 1911, is valid and in full force and effect. 2. That Ordinance No. 361, approved by the city of Coeur d'Alene on the 15th day of September, 1911, is valid and in full force and effect. 3. That the contract set forth in the pleadings, dated September 23, 1912, between the city of Coeur d'Alene and the Warren Construction Company, is valid and binding upon the parties to such contract. 4. That the injunction issued should be dissolved. 5. That judgment should be entered in favor of appellants in accordance with this opinion.

The judgment is reversed, and the trial court is directed to enter judgment in accordance with this opinion. Costs awarded to appellants.

SULLIVAN, J., Concurring.—I concur in the conclusion reached by Mr. Justice Stewart. If it appear from the record that Warren Brothers Company, the owner of said patent, had any interest whatever in the bid which was accepted by the city, the city authorities should be enjoined from proceeding under said contract. The owner of a patented paving material is not permitted to bid or to have any interest in a bid for paving a street under the laws of this state. If he were allowed to do so, there would be no real competition

in the bids, for if the owner of the patent agreed to furnish the patented material to anyone bidding for the contract, say at two dollars per square yard, and then bid for the contract at two dollars per square yard, there would be no competition and could be none in the matter. But where each bidder can procure the patented material on the same terms and the owner of the patent is not permitted to bid nor to have any interest in any bid whatever for the paving of the street, then there would be legitimate competition. But as the point is not made on this appeal that the owners of the patent have any interest in the bid, I concur in the conclusion reached by Mr. Justice Stewart.

AILSHIE, C. J.—I concur in the conclusion reached by Mr. Justice Sullivan.