(44 South. 267.)

No. 16,610.

LACOSTE v. CITY OF NEW ORLEANS et al.

(June 21, 1907.)

1. MUNICIPAL CORPORATIONS—PAVING CONTRACTS—PATENTED MATERIAL.

The fact that a pavement is patented is no obstacle to full and fair competition upon a municipal contract for the laying of it, when the patentee has filed with the city authorities an agreement to let the successful competitor for the contract have the free use of the patent upon payment of a fixed royalty, thereby placing all prospective competitors upon an equal footing; it appearing that the royalty thus exacted was reasonable, and did not destroy the margin of profit under the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 36, Municipal Corporations, § 855.]

2. SAME.

It is no answer to say that the patentee can underbid his competitors for the contract. To him, as to the other bidders, the sole inducement for bidding on the contract is the margin of profit which he sees in it, and for him, as for all others, this margin of profit begins only after the royalty has been paid.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Alexander B. Lacoste against the city of New Orleans and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Cage, Baldwin & Crabites, for appellant. Henry Garland Dupre, Asst. City Atty., and Samuel Louis Gilmore, City Atty., for appellee the city of New Orleans. James Clark Henriques, for appellee the Southern Bitulithic Company. Thomas Jones Cross, City Atty. of the city of Baton Rouge, amicus curiæ. Ruffin Golson Pleasant, City Atty. of the city of Shreveport, amicus curiæ. Denegre & Blair, amici curiæ.

PROVOSTY, J. The charter of the city of New Orleans requires that all of the contracts of the city for an amount exceeding $500 shall be let to the lowest responsible bidder after advertisement, with right to reject any and all bids. By the same charter, when the property owners along a street are to share in the expense of paving the street, they have the right to determine "the character or quality of said pavement." The property owners along Dumaine street, in said city, petitioned the council for the paving of said street, and chose the "bitulithic" pavement. After regular advertisement, etc., the city let the contract to the Southern Bitulithic Company; it being the lowest bidder. "Bitulithic" is the name of a particular kind of pavement of the invention of Warren Bros., of Boston, Mass., and accordingly the city authorities, in advertising and awarding the contract, framed the specifications in such way as to necessitate the use of the processes and materials pertaining to said invention. The evidence shows that there is no other way of laying "bitulithic" pavement or any so-called "bitulithic" pavement. These processes and materials are protected by letters patent; and this has led the plaintiff, a property owner on said street, to bring the present suit enjoining the carrying out of the contract, on the ground that it was let without competition, because it calls for the use of patented processes and materials. To obviate that very objection, and to put all competitors for the contract on an equal footing, the patentees had filed with the city a document in which they agreed to let the

successful bidder have the use of their patents, and to furnish expert inspectors to see that the materials were prepared, and the pavement laid according to formula, for 25 cents per square yard.

The question presented is whether an agreement of that kind makes competition possible.

The evidence shows that it secures to all prospective bidders for the contract the use of the patents in question upon payment of 25 cents royalty. The argument of the learned amicus curiæ to the contrary is founded upon a misconception of the proven facts.

Where such a document is filed, therefore, all prospective bidders are placed on the same footing, and the situation is precisely the same as if a patented process did not have to be used, except that 25 cents per yard additional must be figured into the cost of fulfilling the contract. But all competitors are under the same necessity of making this addition to their estimate, and hence no inequality is created.

Having to pay this royalty could prevent full and fair competition only if thereby inequality were created between the competitors; and it is argued that inequality is thereby created because the patentee does not have to pay that royalty to himself, and may therefore, either in his own name or through some alter ego, underbid his competitors. But that argument is merely specious. To the patentee, as to all other bidders, the sole inducement to bid on the contract is the margin of profit which he thinks he sees in it; and no more for him than for anyone else does his royalty enter into that margin of profit. For all others that margin of profit begins after payment of the royalty to him; for him it begins after he has, as it were, paid the royalty to himself. The royalty is assured to him whether he gets the contract or not, and hence does not enter into his margin of profit under the contract. In other words, it is not as patentee that he competes for the contract, but as contractor. As contractor, he pays the royalty to himself as patentee, if he secures the contract, precisely as the other contractors would have to pay it if they secured the contract.

As we understand the testimony of the city engineer, the cost of laying a bitulithic pavement is something less than that of laying ordinary asphalt pavement, even including in the cost this 25 cents royalty; and we understand from the same testimony that the price of the present contract, $2.80 per square yard, leaves a margin of profit amply sufficient for all purposes of competition after payment of this royalty.

We have considered whether the stipulation, as to inspectors for supervising the manufacture of the materials and the laying of them, did not practically amount to a reservation of authority to the patentee, by the exercise of which they might render the execution of the contract more burdensome or less burdensome at their whim and caprice, and whether this might not have the effect of deterring competition. But nothing of that kind is even hinted at; and, furthermore, the evidence shows that nothing of that kind would be possible, and it shows that the same kind of pavement is being laid in Shreveport, Donaldsonville, and Baton Rouge under competitive contracts without hitch, and to the perfect satisfaction of all.

A case from the Appellate Court of the state of Indiana, a court corresponding, we understand, with the Courts of Appeal of this state (Seibert v. City of Indianapolis, 81 N. E. 99), is submitted to us, in which the same patented pavement was involved, together with an agreement by which the patentees relinquished to whoever would be the successful bidder the use of the pavement process, and bound themselves to furnish the

cement at 90 cents per square yard. The difference between that case and this is that in the instant case the patentee does not furnish the materials, but relinquishes to the contractor the right to manufacture them. Whether that circumstance distinguishes the two cases it is needless to consider. The argument of the court in that case is that there would be no competition in the contract because the cements would have to be bought, not at a price fixed by competition on the open market, but at a price fixed by the patentee. The fallacy of this argument lies in the assumption, which it gratuitously makes, that the statute requires that there shall be competition in the purchase of the materials, whereas the statute only requires that there shall be competition in the award of the contract. There is competition in the award of a contract if the award is made after due advertisement and with a margin of profit the same for all. We repeat, if the patentee himself is a competitor for the contract, he must take into consideration that the margin of profit for him in the contract is the same as for his competitors, because it only begins where his royalty ceases; that so far as his royalty as patentee is concerned he gets that whether the contract falls to him or not, and hence such royalty cannot be an inducement to him to compete for the contract.

In a recent very able opinion, in the case of Saunders v. Iowa City (not yet officially reported) 111 N. W. 529, the Supreme Court of Iowa had discussed this question very elaborately, referring to all the cases. We think it would be pure waste of time to travel over the same grounds and rehash the same arguments.

Nothing contained in the present opinion is intended to militate in the slightest degree against the decision of this court in the case of Burgess, Bennett, etc., v. City of Jefferson, 21 La. Ann. 143, or the dictum in Asphalt Paving Co. v. Gogreve, 41 La. Ann. 261, 5

South. 848, where no such agreement had been filed by the patentee as in this case.

Judgment affirmed.