(102 So. 875)

No. 26855.

## McCUTCHEON v. CITY OF SHREVEPORT.

(Jan. 5, 1925. Rehearing Denied Feb. 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Municipal corporations ⬤ 323(3)—Property owner not barred from "contesting" validity of petition by failure to sue within 30 days.**

"Contesting" required by Act No. 115 of 1922, § 2, within 30 days from publication of notice 'of filing of petition for street improvement, does not relate to institution of suit, but only to protests' before city council by adverse property owner against validity or sufficiency of petition.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contest.]

2. **Municipal corporations ⬤ 330(4)—Resolution adopting proposal to permit use of patented paving process held void as permitting stifling of competitive bids.**

City council's resolution, accepting corporation's proposal to permit city or any contractor to use its patented bitulithic pavement on payment of stipulated royalty, which proposal did not specify price at which cement called for would be furnished, *held* void as making possible stifling of competitive bids by specifying cement manufactured only by such corporation, thus defeating purpose of Act No. 187 of 1920, § 3, requiring that municipalities let contract to lowest responsible bidder.

### On Application for Rehearing.

3. **Municipal corporations ⬤ 330(4)—Property owners may petition for proprietary pavement, if fair competition in bidding is secured.**

City property owners may petition for any specified patented or proprietary pavement, if paving is done under conditions securing to independent contractors free and fair competition in bidding.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Suit by M. A. McCutcheon against the City of Shreveport. Judgment for defendant, and plaintiff appeals. Annulled and reversed, with directions.

Lewell C. Butler, of Shreveport, and Harry H. Russell, of Monroe, for, appellant.

B. F. Roberts, City Atty., and Foster, Looney, Wilkinson & Smith, all of Shreveport, for appellee.

LAND, J. Plaintiff is the owner of a tract of land abutting on Fetzer avenue in the city of Shreveport, and seeks in the present proceeding to enjoin defendant city from awarding a contract to pave said avenue with "Warrenite-Bitulithic pavement," under an ordinance of the city council ordering said paving and advertisement for bids.

As grounds for the issuance of the injunction prayed for, plaintiff contests the validity and sufficiency of the petition of the owners of property fronting on said avenue, and alleges that open, free, and fair competition in bidding is prevented as to independent contractors, under the license agreement filed with the city council by Warren Bros. Co. of Boston, Mass., under the resolution of said council adopting said license agreement, and under the specifications for paving said avenue adopted by said council, and on file in the office of the city engineer.

Defendant city filed a plea of prescription of 30 days under Act 115 of 1922, as a bar against the attack made by plaintiff upon the validity and sufficiency of the petition of the property owners. This plea was sustained by the trial judge, evidence was taken on the other grounds of the rule nisi to determine whether or not the injunction should issue, and the injunction applied for was refused. Plaintiff has appealed.

### Plea of Prescription.

[1] 1. It is provided in section 2 of Act 115 of 1922 that:

"Notice of the filing of a petition for an improvement under the provisions of this act shall be given by the clerk or engineer of the municipality by publication in the official journal * * * and after thirty days from the date of such publication * * * all persons shall be barred from contesting the validity or sufficiency of the petition for improvement or interfering with the progress of the improvement as herein provided."

A formal protest against the validity and sufficiency of the petition of the property owners was made by plaintiff before the city council on the 29th day after the publication of the filing of the petition, and was, therefore, presented timely.

It is true that plaintiff's suit was not filed in the district court of Caddo parish within the 30-day limit prescribed by Act 115 of 1922 for contesting the validity or sufficiency of the petition of the property owners. The "contesting," however, required by said act does not, in our opinion, relate to suits to be instituted in a state court of competent jurisdiction, but only to protests before the city council, to be made by an adverse property owner, against the validity or sufficiency of the petition of the property owners requesting the paving to be ordered. No jurisdiction is conferred by said act upon any state court to try and decide this contest in the first instance. The notice of 30 days is by publication, and not by citation as in a formal suit, and its clear purpose is to summon property owners before the council to urge any objection which they may have to the validity or sufficiency of the petition on file, and to debar them, as to such objections, from interfering thereafter with the progress of the improvement by suit in a state court, unless the protest has been made within the statutory limitation. Act 115 of 1922 is intended by the Legislature as a statute of repose, and evidently has been enacted in the exercise of a wise public policy. However, under the view which we have taken as to the merits of this case, it does not become necessary for us to pass upon the issue of validity or sufficiency of the petition filed by the property owners.

### On the Merits.

[2] 2. The license agreement filed with the city council of the city of Shreveport by Warren Bros. Co. of Boston, Mass., reads, in part, as follows:

"Inasmuch as it is desired by your municipality to receive bids for the improvement of streets herein with the Warrenite-Bitulithic pavement, and inasmuch as the said pavement is covered by letters patent issued by the United States and owned by Warren Bros. Co., which patents have not expired, and which patents cover only the wearing surface of said pavement, and the method and process of constructing the same, and in order that there may be competitive bidding for furnishing and constructing said pavement, on which it is desired to receive bids, and enter into a contract to construct any public improvement in which said patented pavement and construction may enter, or become a part of said improvement."

"Now, therefore, if the city of Shreveport shall adopt specifications requiring the construction of Warrenite-Bitulithic pavement, and advertise for bids for said construction, Warren Bros. Co. hereby relinquishes and places at the disposal of said city, full rights to use all of the patents necessary for the construction and maintenance of said pavement, either for itself, or for any bidder, who is desirous of bidding on said pavement, and to whom a contract may be let for the construction thereof, for the sum of twenty-five cents ($.25) for each square yard of said pavement, laid by either the city itself, or by any contractor, in pursuance of any contract let as aforesaid."

The letters patent referred to by Warren Bros. Co. in said license agreement include a patent granted to Frederick John Warren May 5, 1903, and which expired May 4, 1920; and also a patent issued to Edwin C. Wallace May 31, 1910, and which is still in force.

The Wallace patent covers "only the wearing surface of the pavement and the methods and processes of constructing the same," as specified in said license agreement.

By resolution No. 27, the city council of the city of Shreveport approved and accept-

ed the proposal of Warren Bros. Co. of Boston, Mass., to permit any contractor or the city of Shreveport to use their patented process, known as Warrenite-Bitulithic pavement, on the payment of a royalty of 25 cents per square yard of pavement, which license charge is to include, without extra cost, service and inspection of their laboratory department, examination of material, and a competent resident inspector of Shreveport when Warrenite-Bitulithic pavement surface is being laid.

The city engineer was authorized by said resolution "to post in his office copy of this license agreement, so that all and any contractors proposing to bid upon any street offered to be paved with Warrenite-Bitulithic pavement may have due notice of the same, and full authority and power to use said patented process on the payment of the sum of 25 cents per square yard, including extra service enumerated in said license agreement without further charge."

Ordinance No. 87 of the city of Shreveport recites that the number legally required of the property owners whose property abuts' on Fetzer avenue, between Texas avenue and western city limits, had requested that said avenue be paved with Warrenite-Bitulithic pavement; and said ordinance ordered said avenue to be "paved with Warrenite-Bitulithic paving according to the plans and specifications for same, which are attached hereto and which are hereby adopted."

Pages 18A and 18B, blue printed forms, annexed to the specifications, are inserted as specifications for "Warrenite-Bitulithic wearing surface." These specifications, pages 18A, and 18B, bear the caption: "Specifications for Warrenite-Bitulithic pavement (patented)." The section in said specifications as to "'wearing surface" reads as follows:

"The coarse wearing mixture shall be composed of mineral aggregate as described below, mixed with Bitulithic cement to thoroughly coat all of the particles and to produce a mixture containing from 5 to 8 per cent. by weight of bitumen soluble in carbon bisulphide."

On March 18, 1902, Warren Bros. registered in the patent office at Washington as a trade-mark the word "Bitulithic." In the statement and declaration of this trade-mark, it is alleged:

That "the class of merchandise to which this trade-mark is appropriated is bituminous products, and the particular description of goods comprised in said class upon which said trade-mark is used is bituminous composition or cement. It is usually displayed on the heads of barrels containing the goods by stenciling and by means of a printed label in which the described trade-mark is shown."

It is, therefore, clear that the specifications adopted by the city council of the city of Shreveport by ordinance No. 87 requires the use of "Bitulithic" cement, a trade-mark or proprietary material, which is manufactured only by Warren Bros. Co. of Boston, Mass.

The uncontradicted testimony in this case shows that, while there is no material difference in the component parts, between asphaltic cement and "Bitulithic" cement, and while a contractor can go into the open market and buy asphaltic cement from a number of dealers, yet he cannot purchase from any of these dealers, except Warren Bros. Co. of Boston, Mass., cement marked or labeled "Bitulithic." Such cement is, therefore, a proprietary article of which this company has the monopoly. Neither the license agreement filed with the city council by Warren Bros. Co., nor the specifications adopted by said council, fixes any stated price at which any independent contractor may obtain "Bitulithic" cement from said company.

It is, therefore, within the powers of Warren Bros. Co., either in its own name, or through some friendly concern, or contractor, to underbid its competitors, by using its own "Bitulithic" cement, or selling it at a re-

duced price to some favorite concern or contractor, and then charging an independent contractor an exorbitant price for the same material, and thereby stifle all full and fair competition. The paving in this case is to be done under Act 187 of 1920, and the provisions of that act are mandatory in the requirement that "the governing body of the municipalities shall let the contract to the lowest responsible bidder, who can furnish satisfactory security." Section 3. In Saxon v. City of New Orleans, 124 La. 717, 50 So. 663, this court said:

"The specifications provide that mineral rubber asphaltic cement (to be used for the purposes of the contract) 'shall be Sarco road compound, manufactured by the Standard Asphalt Rubber Company, of Chicago, Ill.,' so that, even if as good, or better, cement for the purpose, or a cement identical in all respects, could be furnished by some one else, it would not meet the demand of the specifications that the cement furnished shall be that manufactured by the Standard Asphalt Company, of Chicago; and, that being the case, it is evident that the Standard Asphalt Company, of Chicago, is about the only person, natural or judicial, who is in position to bid on the contract."

That "Bitulithic" cement must be used in the specifications in this case, and that no other cement can be used, is made plain by two indisputable facts: First. Bitulithic cement is required in the specifications adopted by the city council of the city of Shreveport for "Warrenite-Bitulithic pavement." Second. At the end of these specifications in a footnote is the following statement:

"N. B.—The foregoing specifications are copyrighted. City and other engineers and municipal officials are given free right to copy the specifications, provided they are not modified as to sections 'Wearing Surface' (requiring 'Bitulithic' cement) and 'Laying,' without the express permission of Warren Bros. Co."

No such permission has been given by said company. No change, therefore, substituting standard asphaltic cement in the specifications in this case has been authorized, and permission to use same in the specifications cannot be legally given either by the city council of the city of Shreveport, or by the city engineer.

As "Bitulithic" cement has been specified, the property owners in this case may demand same. Something else as good cannot be substituted.

This case, therefore, falls clearly within the decision, and within the reasons given therefor, in the Saxon Case above cited. The La Coste Case, 119 La. 469, 44 So. 267, relied upon by defendant, differs essentially from the Saxon Case and the present case. The Southern Paving Company was awarded the contract as the lowest bidder in the La Coste Case. It is stated by this court in that case that "the city authorities, in advertising * * * the contract, framed the specifications in such way as to necessitate the use of the processes and materials pertaining to said invention," referring to the letters patent issued to Frederick John Warren May 5, 1903, the original patent for Bitulithic pavement, which was in force in the year 1907, when the La Coste decision was rendered, but which expired May 4, 1920.

The word "Bitulithic," does not appear in the Warren patent, which covers certain street pavement mixtures in combination with a bituminous binder. It is expressly stated in the opinion in the La Coste Case "that in the instant case the patentee does not furnish the materials, but relinquishes to the contractor the right to manufacture them." Page 473 (44 So. 268).

The bitumen and other materials composing the street pavement mixtures protected by the Warren patent could be bought in that case by the contractor from any general dealer, and could be manufactured by him into such patented composition. Free and fair competition was thereby secured. But in the present case, "Bitulithic" cement, a proprietary material, protected by the trademark of Warren Bros. Co., and manufactured solely by said company, can be obtained

only from this concern and not in the open market. Neither the license agreement in this case, nor the specifications adopted by the city council, concedes to any independent contractor the right, either to manufacture the materials required, or to purchase the same from said company at any fixed price.

The Southern Roads Company, of which Herbert M. Warren is second vice president, is the lowest bidder in this case, complying with the specifications.

Under such conditions, free and fair competition is denied to independent contractors in bidding upon contracts for "Warrenite-Bitulithic pavement," and it is self-evident that the stifling of competitive bids is possible under resolution No. 27 of the city council of the city of Shreveport, adopting the license agreement, and under the specifications for said pavement. Petitioner therefore prays for the rescission of said resolution. The charter of the city of Shreveport does not authorize the laying of patented pavement, as may be done in the city of New Orleans by Act 59 of 1908, p. 74. It is expressly provided in said act, in order to secure fairness and equality among the contractors in bidding, that the price per square yard must be stipulated. The necessity of doing so, where trade-mark or proprietary material is to be used, and which cannot be obtained in the open market, is obvious.

It is therefore ordered that the judgment appealed from be annulled and reversed. It is now ordered that resolution. No. 27 of the city council of the city of Shreveport be decreed illegal, null, and void, and of no effect. It is further ordered that the rule nisi issued herein be made absolute, and that a writ of injunction be issued herein by the Hon. J. H. Stephens, Judge of the First Judicial District Court, restraining and prohibiting the city of Shreveport, the Hon. L. E. Thomas, Mayor, and the commissioners of said city, from further proceeding to award any contracts under the petition of the property owners herein filed, and under the advertisements for bids herein ordered by said city.

On Application for Rehearing.

PER CURIAM. [3] The decision in this case does not prevent the property owners of any city in this state from petitioning for any specified patented or proprietary pavement, provided the paving is done under conditions that secure to independent contractors free and fair competition. Rehearing refused.