## WILSON v. BOARD OF COMMISSIONERS OF WARRICK COUNTY ET AL.

[No. 11,465.    Filed January 25, 1923.]

1. COUNTIES.—*Board of Commissioners.*—*Failure of Auditor to Make Record of Proceedings.*—*Nunc Pro Tunc Entry.*—Where the county auditor, who is charged with the duty of making the records of the county board of commissioners, fails to record an entry of the board's proceedings, the board may direct, at a subsequent meeting, that the entry be spread of record *nunc pro tunc.*  p. 254.

2. HIGHWAYS.—*Improvement.*—*Petition.*—*Withdrawals.*—*Jurisdiction of Commissioners.*—Where the county board of commissioners has acquired jurisdiction over a proceeding for the improvement of a highway, the board did not lose jurisdiction by the withdrawal of any number of petitioners for the improvement, so long as one remained.  p. 255.

3. HIGHWAYS.—*Improvement.*—*Proceedings of County Board of Commissioners.*—*Collateral Attack.*—Where the county board of commissioners has acquired jurisdiction over a proposed highway improvement, its proceedings thereafter are not subject to collateral attack because of irregularities and errors. p. 255.

4. HIGHWAYS. — *Improvement.* — *Invalid    Election.* — *Ordering Second Election.*—*Power of County Board of Commissioners.*— Where the county board of commissioners, which finds the result of elections to authorize road improvements, after submission of the canvass of votes to it, found that no legal ballots were cast, and that the election was therefore invalid, it did not exceed its authority in ordering a valid election. p. 255.

5. HIGHWAYS.—*Improvement.*—*Specifications.*—*Certainty.* — *Materials.*—*Collateral Attack.*—A specification in the viewers' report that the paving material used in a road improvement should consist of "clean Ohio river gravel as free from sand as could be found," *held* not too indefinite for competitive bidding, nor objectionable as favoring some bidders as against others by reason of possible collusion with the superintendent. p. 256.

6. HIGHWAYS.—*Improvement.*—*Action    to    Enjoin.*—*Specifications.*—*Collateral Attack.*—That a specification in a viewers' report of paving material to be used in a road improvement is to indefinite and favors some bidders as against others, cannot be asserted in an action to enjoin the county commissioners

from proceeding with the improvement, such contention being a collateral attack. p. 256.

7. HIGHWAYS.—*Improvement.—Notice to Bidders.—Validity.— Provision Requiring Contractor to Purchase Bonds.*—A provision in the notice to bidders that the contract for a road improvement could be let subject to the contractor's purchasing or furnishing a purchaser for the bonds issued to pay for the improvement, did not make the notice void and subject to collateral attack, in the absence of averment and proof that it caused the bidders to increase the amount of their bids or not bid at all, thereby preventing competitive bidding and resulting in the sale of the bonds for less than par, in violation of the statute. p. 257.

8. HIGHWAYS.—*Improvement.—Construction of Roads Forming One System.—Authority of Commissioners to Award Contract for Less than Whole System.*—Where the county board of commissioners is authorized by the result of an election to construct a system of roads as one road, the board has no power to construct any one or more of the roads less than the whole. p. 257.

From Warrick Circuit Court; *Fred H. Heur,* Special Judge.

Action by Wesley Wilson and others against the Board of Commissioners of Warrick county. From a judgment for defendants, the plaintiff named appeals. *Reversed.*

*U. W. Youngblood,* for appellant.

*Arch Stevenson, Sylvester DeForest* and *Stone & Kreuzberger,* for appellees.

NICHOLS, C. J.—This was an action by appellant and others against appellees to enjoin appellees from taking steps necessary for the improvement of a public highway.

The court found for appellees against appellant and the other plaintiffs, and, after overruling their joint and separate motions for a new trial, rendered judgment in favor of appellees.

The only error assigned is the action of the court

in overruling appellant's motion for a new trial, the reasons for which motion are hereinafter considered. The facts which are undisputed, briefly stated, are that on February 9, 1920, one Forler and seventy-five others filed their petition with the auditor of Warrick county, praying for the improvement of five roads in Anderson township, said county, alleging that said roads were connected *so as to form one system* and with a request that they be voted on at the election to be held as one road. The commissioners to whom the petition was referred filed a favorable report. Thereafter the viewers filed an amended report eliminating road No. 5 described in the petition. The report was approved at the regular June session, 1920, of the said board and an election ordered. The report provided that the paving material should consist of clean Ohio river gravel as free from sand as could be obtained. There was no other provision as to the character of the material to be used. In the notice of such election it was stated that "said roads are connected so as to form one system, and that they will be voted on as a whole." There were 133 votes cast in favor of the improvement and seventy-one against it. The board made an order approving said election, but thereafter objections to the decision of the board of canvassers were filed and sustained and the board found that no legal ballots were cast in said election, and that there was no legal election held in said township, that the order of the board theretofore made approving said election was void and should be rescinded. The board thereupon ordered that the construction of the improvement be submitted to an election, and ordered the auditor to give the required notice thereof, and appointed election commissioners and an inspector of such election. On November 16, 1920, at a special meeting of the board, twenty-seven of the petitioners filed their written request that the board strike each of their

names from the petition and asking to be relieved from further liability as petitioners. This motion was sustained. As there were only seventy-six petitioners originally there were left but forty-nine names on the petition.

There was an objection to the election based upon a petition with the forty-nine names which objection was overruled, and the board ordered that a notice of an election to be held January 8, 1921, be given and rescinded the order as to the former election. At the last election 211 ballots were cast for said road system and 158 against it. Sealed bids were received after notice, on May 3, 1921. It was stipulated in the notice to bidders that the contract should be let subject to the contractor or contractors purchasing or furnishing a purchaser for the bonds that the board should issue to pay for the improvements of said roads when the bonds were offered for sale by the treasurer of the county, and that the refusal to purchase the bonds or furnish a purchaser should void the contract. Bids were received May 3, 1921, pursuant to such notice, and the contract awarded as to roads 1, 3 and 4 to one Bell, and the bids for the construction of road No. 2 were rejected, without giving any reasons therefor. There was a provision in the contracts entered into with Bell that the same were awarded to him subject to the condition that "such contractor shall purchase or furnish a purchaser for the bonds on the respective roads when offered for sale by the treasurer." There was a superintendent of construction, and a finding by the board that the total cost of the improvement was $43,400. The board thereupon determined to issue bonds in that sum to pay for the construction of such improvements and ordered the auditor to give notice accordingly.

In the year 1920, the assessed valuation of all the property of said Anderson township was $1,086,425, and

in the year 1921, it was $1,060,690. At the February session, 1921, of the board an entry was prepared by the attorneys for petitions showing that the certificate of the board of canvassers of the election of January 8, 1921, was presented to the board, and a finding made that the election was regularly held, and that a majority of the votes were cast in favor of the construction of the improvement, and that an order for its establishment and that the auditor publish notices to bidders was made. The entry was signed by the board and left with the papers, but by some inadvertence was never spread of record until the February session of 1922, when the board, without notice, and without any written memorandum on which to base a *nunc pro tunc* entry other than the prepared entry signed as aforesaid and left among the files, ordered such entry spread of record *nunc pro tunc* as of February 8, 1921. The cause was tried January 9, 1922, and taken under advisement by the court. While so held under advisement, the *nunc pro tunc* entry was ordered spread of record, and, on motion of appellees, the case was opened and the record of the *nunc pro tunc* entry was put in evidence. Appellant's challenge of the right to make this *nunc pro tunc* entry cannot be sustained. The board of commissioners is a continuing body and the auditor is charged with making its records and when for any cause he omits so to do, upon discovery of such omission the board should direct the record to be made. *Board, etc.,* v. *State, ex rel.* (1921), 191 Ind. 335, 132 N. E. 680; *Securities Co.* v. *Arbuckle* (1890), 123 Ind. 518, 521, 24 N. E. 329. The auditor testified, among other things, that unless enjoined by the court, he intended to proceed with his official duties necessary for the construction of the improvement.

Appellant contends, first, that the board of commissioners did not have any jurisdiction to enter into any

contract for the improvement of the roads in 2-4. question, and, second, that if the board had such jurisdiction to enter into a contract for the improvement, the contract into which the board did enter is void and its enforcement may be collaterally attacked. There is no question as to the regularity of these proceedings until the time at which the board of commissioners attempted to order an election after holding that the first election was invalid. Theretofore the petition signed by seventy-six taxpayers of the township had been filed and the required notice thereof had been given. The board had assumed jurisdiction and had appointed the viewers who had reported, and there had been an attempt to call an election, but because of some irregularity, the election was invalid. The board having once acquired jurisdiction, it was not ousted by the withdrawal of any number of petitioners, so long as one of them remained. The fact that the number was reduced by the withdrawals below fifty could make no difference. *Little* v. *Thompson* (1865), 24 Ind. 146; *Thorne* v. *Silvers* (1909), 174 Ind. 504, 89 N. E. 947, 92 N. E. 161; *Isanogle* v. *Russey* (1910), 174 Ind. 245, 91 N. E. 938. Jurisdiction having been acquired by the board, its proceedings thereafter were not subject to collateral attack because of irregularities and errors, if any. *Board, etc.,* v. *State, ex rel., supra.* Even if the action of the board in holding that the first election was invalid and in ordering another election had been irregular, its action was not subject to collateral attack. *Galvin* v. *Taylor* (1916), 184 Ind. 736, 112 N. E. 513. But we do not conclude that such action was even irregular. The canvass of the votes cast at the election must be submitted to the board, and it must find as to the result of the election. Having found that such election was invalid and that therefore there were no legal votes, it is clear that it did not exceed its authority in

ordering a valid election. We hold that the election held pursuant to such order was a valid election.

Appellant next insists that the specification in the viewers' report that the paving material should consist of clean Ohio river gravel as free from sand as could be found is too indefinite for competitive bidding, and that, by reason of possible understanding between the contractor and the superintendent in charge, some bidders would be placed in more favorable situation than others. But we are not impressed with this contention. In the first place, such an attack is collateral, and cannot be made by appellant. Even if it could be so made, there is nothing in the record that shows that clean Ohio river gravel is under the control of any one person so as to create a monopoly, or that it is not equally accessible to all, as we reasonably assume. Were such material patented we would have a different question to deal with, as in *Monaghan* v. *City of Indianapolis* (1905), 37 Ind. App. 280, 76 N. E. 424; *Tousey* v. *City of Indianapolis* (1911), 175 Ind. 295, 94 N. E. 225; *Seibert* v. *City of Indianapolis* (1907), 40 Ind. App. 296, 81 N. E. 99. Of necessity, the superintendent in charge of the work must have authority to exercise a reasonable discretion as to whether the work is being properly done, and as to the quality and kind of material that is being used, and there is no presumption that he, as a public officer, will not rightfully discharge his duties, one of which here involved is to determine that the gravel is Ohio river gravel of the quality specified. *Racer* v. *State* (1892), 131 Ind. 393, 404, 31 N. E. 81; *Cooper* v. *Ray, Auditor* (1897), 148 Ind. 328, 47 N. E. 668; *Studabaker* v. *Studabaker* (1898), 152 Ind. 89, 95, 59 N. E. 933. We are not in harmony with appellant's contention that the board of commissioners were without jurisdiction to enter into any contract at all.

In the notice to bidders, they were informed that the contract or contracts would be let subject to the contractor or contractors purchasing or furnishing a purchaser for the bonds that the board should issue to pay for the improvement and that a refusal to purchase such bonds or to furnish a purchaser therefor should void the contract. Appellant contends that this provision in the notice voided any bid and contract entered into pursuant to such notice; that as by the statute such bonds must be sold for not less than par; and that, as at that time highway bonds were selling at less than par, the bidder would in effect be required to increase his bid so that, having purchased the bonds at par, he could thereafter dispose of them at the necessary discount; that such a provision would thereby be calculated to cause bidders to increase the amount of their bids or not to bid at all, being unable to handle the bonds under such conditions. That thereby competitive bidding would be prevented, and in effect the bonds would be sold for less than par which would be violative of the provisions of the statute. It must be admitted that there is merit in appellant's contention as to the probable effect, but there is no averment and proof that there was in fact such effect in this case. In the absence of such averment and proof, we regard the provision as an irregularity in the notice not making it void, and not subject to collateral attack. Such a provision is not to be commended, and were there evidence that it in fact had the effect as contended by appellant we might well consider the question of the validity of the contract based on such provision.

We are of the opinion that appellant's last contention must prevail. It will be observed that the petition herein stated that the roads which they desired to have constructed were so connected as to

form one system, and prayed that they be voted on at the election to be held as one road. Notice to that effect was given in the call for the election. Such election was held, the taxpayers voting on such system of roads as a whole. The result of the election authorized the board of commissioners to construct the system as one road, but did not give it authority to construct any one or more of the roads less than the whole. It certainly cannot be the law that the roads may be treated as one whole for the purpose of inducing the taxpayers to vote for them, and thereafter treated as separate units with discretionary power in the board to decide what part of the system will be constructed and what part will not be constructed. We hold that the board of commissioners were without authority to contract for the construction of less than the whole system.

Judgment reversed, with instructions to grant a new trial.