46 N.J. 349 (1966)
217 A.2d 126
GARDEN STATE DAIRIES OF VINELAND, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF NEW JERSEY, ET AL., DEFENDANTS-RESPONDENTS.
The Supreme Court of New Jersey.
Argued December 20, 1965.
Decided February 21, 1966.
*351 Mr. Norman Heine argued the cause for the appellant (Mr. Victor Taylor, on the brief).
Mr. Michael Gold, Deputy Attorney General, argued the cause for the respondents (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. Louis P. Dolan, Jr., argued the cause for intervenor United Milk Producers Cooperative Association of New Jersey (Messrs. Dolan and Dolan, attorneys; Mr. William Martin Cox, on the brief).
Mr. James A. Waldron argued the cause for intervenor Inter-State Milk Producers' Cooperative (Messrs. Backes & Backes, attorneys; Mr. A. Evans Kephart, of the Philadelphia Bar, of counsel).
*352 The opinion of the court was delivered by JACOBS, J.
On February 3, 1965 the Division of Purchase and Property of New Jersey's Treasury Department issued a proposal for bids on a contract to supply milk to the New Jersey State Hospital, Ancora, Hammonton, New Jersey. The proposal set forth that the vendor must certify the quantity of New Jersey milk purchased by him during the preceding year and to be purchased by him during the current year in accordance with L. 1964, c. 194 (N.J.S.A. 52:25-23; N.J.S.A. 52:27B-61). That statute provides, in effect, that a seller of fresh milk to a State agency must certify that during the preceding year he purchased fresh milk produced in New Jersey in an amount at least equal to the amount being sold by him to the State agency and, in addition, must agree that during the current year he will purchase fresh milk produced in New Jersey in an amount at least equal to the amount he is selling to all New Jersey State agencies. On February 15, 1965 the plaintiff Garden State Dairies filed a complaint alleging that it operates a dairy in Bridgeton, New Jersey, engages in the sale of milk within and outside New Jersey, is unable to certify in accordance with L. 1964, c. 194, and is therefore precluded from making a bid to supply milk to the New Jersey State Hospital. The complaint seeks a declaration that L. 1964, c. 194 is unconstitutional and a restraint against the acceptance of bids.
On February 9, 1965 the Board of Education of the Township of Cinnaminson issued an invitation for bids on a contract to supply milk to the Cinnaminson public schools. The invitation set forth that, as required by State law  L. 1964, c. 193 (N.J.S.A. 18:6-25; N.J.S.A. 18:7-64; N.J.S.A. 18:11-14), each bidder must certify that during the preceding year he purchased fresh milk produced within New Jersey at least equal in amount to the amount he seeks to sell to the school district and, in addition, agrees to purchase during the current year an amount at least equal to the amount he proposes to sell to all school districts in New Jersey. On March 1, 1965 the plaintiff filed a complaint *353 against the Cinnaminson Board of Education alleging that it is unable to make the certification required by the Board and seeking a declaration that L. 1964, c. 193 is unconstitutional and a restraint against the acceptance of bids. On March 8, 1965 an order was entered consolidating the actions instituted by the plaintiff.
In the trial court various interventions were permitted, answers were filed, and a motion for summary judgment was made by the plaintiff. After hearing argument, the trial judge denied the motion for summary judgment and, although no cross motions were filed by the defendants, a final judgment in their favor was entered. Notice of appeal to the Appellate Division was filed by the plaintiff and we certified on our own motion before argument there. In support of its appeal, the plaintiff has filed a brief in which it contends primarily that, although the statutes in question deal only with purchases of milk by the State itself, its agencies and political subdivisions, they nonetheless "provide for an unconstitutional restraint of interstate commerce," citing Polar Ice Cream & C. Co. v. Andrews, 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389 (1964), and the earlier cases referred to therein. Although Polar struck down Florida trade regulations which reserved to local producers "a substantial share of the Florida milk market" (375 U.S., at p. 375, 84 S.Ct., at p. 386, 11 L.Ed.2d, at p. 398), it did not deal with the extent of the power to impose conditions on those who seek to sell milk to government itself. Admittedly any private purchaser of milk is fully empowered to confine his purchases to New Jersey milk or from dealers who sell equivalent quantities of New Jersey milk; may the State as a purchaser exercise a similar power in the purchase of milk for itself? Cf. Heim v. McCall, 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206 (1915); Atkin v. State of Kansas, 191 U.S. 207, 24 S.Ct. 124, 48 L.Ed. 148 (1903); see Perkins v. Lukens Steel Co., 310 U.S. 113, 127, 60 S.Ct. 869, 876, 84 L.Ed. 1108, 1114 (1940); McAllister, "Court, Congress and Trade Barriers," 16 Ind. L.J. 144, 164-165 (1940)
*354 In Atkin v. State of Kansas, supra, an eight-hour work law applying to public work was sustained; the court rested its decision on the broad ground that, where work was being performed for the state or its municipalities, "it is for the state to prescribe the conditions under which it will permit work of that kind to be done." 191 U.S., at p. 224, 24 S.Ct., at p. 28, 48 L.Ed., at p. 158. In Heim v. McCall, supra, the court sustained a New York statute which provided that, in the construction of public works, only citizens shall be employed and citizens of New York shall be given preference; the court rested its holding on the same ground as that expressed in Atkin, namely, that a state acting as employer in the construction of public works may prescribe the terms under which it will permit the labor to be performed. 239 U.S., at pp. 191-193, 36 S.Ct., at pp. 83-84, 60 L.Ed., at pp. 216-217. In Perkins v. Lukens Steel Co., supra, a Supreme Court opinion which recognized the power of the United States to impose conditions upon suppliers who dealt with it, both Atkin and Heim were cited by Justice Black for the proposition that "Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." 310 U.S., at p. 127, 60 S.Ct., at p. 876, 84 L.Ed., at p. 1114.
In an article written shortly after Heim was decided, Thomas Reed Powell questioned the breadth of its view that a state has unlimited power in the selection of employees on its public works. See Powell, "The Right to Work for the State," 16 Colum. L. Rev. 99 (1916). He pointed out that the fourteenth amendment does set limits (cf. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952)) and he urged that an exclusion of aliens on public works could stand only if it could meet the test of reasonable relation to the public welfare. See Note, "Constitutionality of Restrictions on Aliens' Right to Work," 57 Colum. L. Rev. 1012, 1017 (1957); cf. Department of Labor and Industry v. *355 Cruz, 45 N.J. 372, 374 (1965); Takahashi v. Fish and Game Commission, 334 U.S. 410, 419-420, 68 S.Ct. 1138, 1142-1143, 92 L.Ed. 1478, 1487 (1948). We need not pursue this issue for here we are not concerned with an arbitrary discrimination against a class or with a restriction unrelated to the State's proper concerns; admittedly the statutes being attacked by the plaintiff apply only to those who seek to sell milk to government itself and apply with complete equality to all of them; and the State's regulation of the production and distribution of milk has long been recognized as intimately identified with the public welfare. See National Dairy Products Corp. v. Hoffman, 40 N.J. 475, 487 (1963); Abbotts Dairies, Inc. v. Armstrong, 14 N.J. 319 (1954); State Board of Milk Control v. Newark Milk Co., 118 N.J. Eq. 504 (E. & A. 1935).
The record before us indicates that during the past decade the costs of local dairy farmers have increased while the prices received by them have shown some general decline. During the same period there has been a sharp reduction in the total number of dairy farms. The goal has been to secure a sound local dairy farm industry as an essential for the welfare of the people of the State. With that public goal in mind, Chapters 193 and 194 of the Laws of 1964 were enacted so as to insure to New Jersey farmers a market at least equivalent to the milk being purchased by the State itself and its subdivisions. The legislative purpose was neither unworthy nor unreasonable and the legislation was not unlike the many state enactments throughout the country which have historically favored local products on public works and in public purchases. See Schrey v. Allison Steel Mfg. Co., 75 Ariz. 282, 255 P.2d 604 (1953); City and County of Denver v. Bossie, 83 Colo. 329, 266 P. 214 (1928); State v. Senatobia Blank Book & Stationery Co., 115 Miss. 254, 76 So. 258 (1917); Pasche v. South St. Joseph Town-Site Co., 190 S.W. 30 (Mo. App. 1916); Ex parte Gemmill, 20 Idaho 732, 119 P. 298 (1911); Hersey v. Nelson, 47 Mont. 132, 131 P. 30 (1913); Knight v. Barnes, 7 N.D. 591, 75 N.W. 904 *356 (1898); Allen v. Labsap, 188 Mo. 692, 87 S.W. 926 (1905). See also Brazie v. Cannon & Wendt Electric Co., 1 Ariz. App. 490, 405 P.2d 281 (1965); St. John v. King, 130 Cal. App. 356, 20 P.2d 123 (1933); Wilson v. Board of Comm'rs., 79 Ind. App. 250, 137 N.E. 783 (1923). While there may have been criticism based on the provincial nature of such enactments, their constitutionality has generally been taken for granted. See McAllister, supra:
"A brief word should be said about a miscellany of state statutes that have been pointed to as examples of state parochialism. Thus, a state or local government may decree by statute or regulation that it will buy only products produced by local producers or that it will employ only local residents or citizens on its public works. This kind of preferential employment has been consistently sustained in the Supreme Court and doubtless the same result would be reached in a buy at home case. The notion underlying these cases is that the state is the sole proprietor of its own public works and governmental undertakings." 16 Ind. L.J., at pp. 164-165.
In Schrey v. Allison Steel Mfg. Co., supra, a statute was upheld giving preference on public work to local contractors who had paid Arizona state and county taxes during the two prior years; the court noted that the state may restrict those with whom it deals so long as there is reasonable basis for the restriction (255 P.2d. at p. 607); Schrey was very recently applied in Brazie v. Cannon & Wendt Electric Co., supra, 405 P.2d 281, where the court relied on Heim and on State v. Senatobia Blank Book & Stationery Co., supra; Senatobia in turn relied on Atkin and expressly rejected the contentions advanced under due process, equal protection and commerce clauses of the federal constitution. 76 So., at pp. 260-261. In City and County of Denver v. Bossie, supra, the court upheld a requirement that Colorado stone and materials be given preference in the construction of municipal buildings; it stated that any doubts as to whether such a requirement amounted to an unlawful restriction on interstate commerce or a denial of equal protection of the laws had been set at rest by Heim. 266 P.2d, at p. 217. See also Ex parte Gemmill, *357 supra, 119 P. at pp. 300-302; Allen v. Labsap, supra, 87 S.W., at pp. 928-929; Pasche v. South St. Joseph Town-Site Co., supra, 190 S.W., at p. 31; Hersey v. Nelson, supra, 131 P., at p. 34; but cf. People ex rel. Treat v. Coler, 166 N.Y. 144, 59 N.E. 776 (1901).
The plaintiff, while not questioning any of the aforementioned statutory restrictions under the fourteenth amendment, urges that they did not bear on interstate commerce and are therefore not in point here. But the truth is that preferments of local products and local work effect some discriminations against interstate commerce though the discriminations may ordinarily be viewed as incidental or insubstantial and as not creating any undue or unreasonable burden on interstate commerce. Cf. Milk Control Bd. of Pennsylvania v. Eisenberg Farm Products, 306 U.S. 346, 59 S.Ct. 528, 83 L.Ed. 752 (1939), and National Dairy Products Corp. v. Hoffman, supra, 40 N.J. 475; see Colorado Anti-Discrimination Commission v. Continental Air Lines, 372 U.S. 714, 721, 83 S.Ct. 1022-1025, 10 L.Ed.2d 84, 89 (1963); Head v. New Mexico Board of Examiners, 374 U.S. 424, 427-429, 83 S.Ct. 1759, 1761-1763, 10 L.Ed.2d 983, 987-988 (1963); Huron Portland Cement Co. v. City of Detroit, 362 U.S. 440, 442-445, 80 S.Ct. 813, 815-817, 4 L.Ed.2d 852, 855-856 (1960); cf. Southern Pacific Co. v. State of Arizona, 325 U.S. 761, 767, 65 S.Ct. 1515, 1519, 89 L.Ed. 1915, 1923 (1945).
In Polar the Supreme Court struck a discriminatory statute favoring local milk producers without any finding that the resulting burden on interstate commerce was undue or unreasonable. 375 U.S. 361, 84 S.Ct. 378, 11 L.Ed.2d 389. But, as we have already noted, that case did not deal with purchases by the state itself and the Court therefore did not discuss Heim or any of the later decisions which have applied it. Nor did it make any reference to decisions upholding restrictive state enactments designed to preserve natural resources for the local citizenry. See Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828 *358 (1908); Geer v. State of Connecticut, 161 U.S. 519, 16 S.Ct. 600, 40 L.Ed. 793 (1896); but cf. Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 92 L.Ed. 1460 (1948); West v. Kansas Natural Gas Co., 221 U.S. 229, 31 S.Ct. 564, 55 L.Ed. 716 (1911). See Bison, "Economic Protective Powers of States Under the Commerce Clause," 38 Geo. L.J. 590, 613 (1950). In the absence of a more definitive expression by the Supreme Court, we are not prepared to accept the view that the absolute rationale of Polar requires the striking of Chapters 193 and 194 as violative of the commerce clause on their face. Nor are we prepared to say that the statutes are to be upheld without regard to any showing as to their effect on interstate commerce; while that approach may receive support from the proprietary rationale of Heim, it appears to us that, in the light of the expanding proprietary activities of the states, it could prove to be a very troublesome one and is not to be looked upon with favor.
The plaintiff here is a New Jersey corporation engaged in business in our State and seeks to sell milk to governmental agencies. The State has decided that purchases of milk with public funds by the State and its subdivisions should be made only from dealers who purchase New Jersey produced milk in equivalent quantities. In the absence of an affirmative showing of undue burden, this traditional and highly limited type of local preferment, in what is basically a local transaction, cannot fairly be said to present the balkanizing evils sought to be guarded against by the commerce clause. When the plaintiff made its motion for summary judgment, it submitted nothing to indicate that the statutory restrictions were creating an undue burden and while all of the parties may have been prepared to introduce evidence dealing with that issue when called upon, they were precluded from doing so by the precipitous entry of final judgment for the defendants. See Seire v. Police and Fire Pension Comm'n., 4 N.J. Super. 230, 236 (App. Div. 1949); Hudson County National Bank v. Simpson, 5 N.J. Super. 135, 137-138 (App. Div. 1949); cf. Sheild v. Welch, 4 N.J. *359 563, 566-567 (1950); Local 33 Int. Hod Carriers, Etc. v. Mason Tenders, Etc., 291 F.2d 496, 505 (2 Cir. 1961); Kaplan, "Amendments of the Federal Rules of Civil Procedure 1961-1963 (II)," 77 Harv. L. Rev. 801, 828 (1964). Since matters of degree are involved, it is evident that the record at this stage is not sufficiently complete to permit any fair determination as to whether interstate commerce is being unduly burdened. See Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 152-156, 83 S.Ct. 1210, 1222-1225, 10 L.Ed.2d 248, 263-265 (1963); Frankfurter, J., dissenting in H.P. Hood & Sons v. Du Mond, 336 U.S. 525, 564-576, 69 S.Ct. 657, 668-675, 93 L.Ed. 865, 888-895 (1949).
In the final point of its brief the plaintiff urges that Chapters 193 and 194 are an invalid exercise of the police power of the State; it acknowledges that the State may broadly enact legislation which it deems necessary for the protection of the public health, safety, morals or general welfare (Hudson County News Co. v. Sills, 41 N.J. 220, 227 (1963), appeal dismissed 378 U.S. 583, 84 S.Ct. 1914, 12 L.Ed.2d 1036 (1964)), but it stresses that the means employed by the Legislature must bear a reasonable relationship to the end sought to be accomplished. See Jones v. Haridor Realty Corp., 37 N.J. 384, 391 (1962). The legislative goal, which we consider to be constitutionally permissible under our own constitution as well as under the fourteenth amendment (see State Board of Milk Control v. Newark Milk Co., supra, 118 N.J. Eq. 504; Abbotts Dairies, Inc. v. Armstrong, supra, 14 N.J. 319; cf. General Electric Co. v. City of Passaic, 28 N.J. 499, 509 (1958), appeal dismissed 359 U.S. 1006, 79 S.Ct. 1146, 3 L.Ed.2d 987 (1959); Roe v. Kervick, 42 N.J. 191, 207 (1964)), was to aid in securing a sound local dairy farm industry in furtherance of the public welfare, by insuring to New Jersey farmers a market at least equivalent to the milk being purchased by the State itself and its subdivisions. Towards that goal, which is clearly public in nature, the Legislature could have directed that all State agencies and subdivisions purchase only New Jersey *360 produced milk. Instead, as to the current year, a course which is less restrictive on a prospective bidder was chosen, for all it need do is agree that during the current year it will purchase an equivalent amount of New Jersey milk. More troublesome is the requirement, which is probably severable (N.J.S.A. 1:1-10), that the bidder additionally certify that it purchased an equivalent amount during the preceding year. The plaintiff contends that this is oppressive and not reasonably related to the end sought by the Legislature and stresses that it arbitrarily excludes all businesses which are new and all those which had not formerly purchased New Jersey milk.
In response, the defendants urge that the legislative requirement for the additional certification was designed "to facilitate administration of the acts" (cf. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 511, 57 S.Ct. 868, 873, 81 L.Ed. 1245, 1254 (1937)) and to forestall "attempts to evade the acts through manipulations in buying and selling milk"; they point out that they did not move for summary judgment but were prepared to meet the plaintiff's contentions and to introduce testimony which would have demonstrated that the statutory requirement was "necessary for fair and orderly administration of the acts"; and they note that they would have presented an administrative interpretation of the acts "which in all probability would remove the objection that the acts are unfair as applied to new businesses or businesses which did not formerly purchase milk directly from New Jersey farmers."
We are satisfied that there must be a remand for testimony and findings on the reasonableness and validity of the additional certification requirement, along with testimony and findings on the extent of the burden on interstate commerce and the validity of the acts under the commerce clause. The trial court's denial of the plaintiff's motion for summary judgment was proper and is affirmed; the entry of final judgment for the defendants was erroneous and is set aside; the *361 cause is remanded for further proceedings in conformity with this opinion.
Modified.
FOR MODIFICATION  Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN  6.
Opposed  None.