98 N.J. Super. 109 (1967)
236 A.2d 176
GARDEN STATE DAIRIES OF VINELAND, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF NEW JERSEY, AND JOHN A. KERVICK, TREASURER OF THE STATE OF NEW JERSEY, DEPARTMENT OF THE TREASURY, DIVISION OF PURCHASE AND PROPERTY, DEFENDANTS.
GARDEN STATE DAIRIES OF VINELAND, INC., A NEW JERSEY CORPORATION, PLAINTIFF,
v.
BOARD OF EDUCATION OF THE TOWNSHIP OF CINNAMINSON AND ARTHUR J. SILLS, ATTORNEY GENERAL OF NEW JERSEY, DEFENDANTS, AND UNITED MILK PRODUCERS COOPERATIVE ASSOCIATION OF NEW JERSEY AND INTER-STATE MILK PRODUCERS' COOPERATIVE, INTERVENORS.
Superior Court of New Jersey, Chancery Division.
Decided November 21, 1967.
*111 Mr. Albert K. Plone for plaintiff Garden State Dairies of Vineland, Inc. (Messrs. Plone, Tomar, Parks and Seliger, attorneys).
Mr. Michael Gold, Deputy Attorney General, for defendants Arthur J. Sills, Attorney General of New Jersey, and John A. Kervick, Treasurer of the State of New Jersey.
Mr. Joseph F. Greene, Jr. for defendant Board of Education of Cinnaminson Township (Messrs. Curry, Purnell and Greene, attorneys).
Mr. A. Evans Kephart, a member of the Philadelphia Bar, of counsel, for intervenor Inter-State Milk Producers' Cooperative (Messrs. Backes & Backes, attorneys).
Mr. Lewis P. Dolan, Jr. for intervenor United Milk Producers Cooperative Association of New Jersey (Messrs. Dolan and Dolan, attorneys).
WICK, J.S.C.
This action is presently before the court on remand from the Supreme Court of New Jersey. Garden State Dairies of Vineland, Inc. v. Sills, 46 N.J. 349 (1966). The purpose of the remand is to receive testimony and to *112 make certain findings concerning N.J.S.A. 52:25-23 and N.J.S.A. 18:7-64. The facts and history of the case are basically as set forth below.
On February 3, 1965 a proposal for bids on a contract to supply milk to the New Jersey State Hospital, Ancora, Hammonton, New Jersey, was issued. The proposal set forth that the prospective vendor must certify the quantity of New Jersey produced milk purchased by him during the preceding year and during the current year, in accordance with the terms of N.J.S.A. 52:25-23 concerning bids for milk contracts of state agencies. On February 9, 1965 the Board of Education of Cinnaminson Township issued an invitation for bids on a contract to supply milk to the schools of that township. The invitation set forth these same certification requirements as provided for by N.J.S.A. 18:7-64 concerning bids for milk contracts of school districts. Basically, both statutes set forth the conditions which dealers in fluid milk must meet in order to be eligible to bid on contracts for the supply of milk to state agencies and school districts. They require that each vendor certify in writing that he purchased during the immediately preceding year fresh milk produced in this State at least equal in amount to that which he seeks to furnish under the contract for which he is bidding. In addition, he must certify that during the year in which he proposes to furnish such milk to state agencies or school districts he will purchase an amount of fresh milk produced within this State at least equivalent to that which he proposes to furnish to the using agency or school district. Desirous of bidding for the aforementioned milk contracts but unable to meet the certification requirement as to the preceding year, plaintiff Garden State Dairies filed in the Superior Court, Chancery Division, this action seeking a declaration that these two statutes are unconstitutional.
In the trial court various interventions were permitted, answers were filed and a motion for summary judgment was made by the plaintiff. After hearing argument, plaintiff's *113 motion for summary judgment was denied and, on the court's own motion, summary judgment was entered in favor of defendants. While an appeal was pending in the Appellate Division, but before oral argument, the Supreme Court of New Jersey on its own motion granted certification. Before the Supreme Court plaintiff argued that the statutes in question provided for an unconstitutional restraint of interstate commerce. In answer to this argument the Supreme Court held that:
"In the absence of an affirmative showing of undue burden, this traditional and highly limited type of local preferment * * * cannot fairly be said to present the balkanizing evils sought to be guarded against by the commerce clause." (46 N.J., at p. 358; emphasis supplied)
Since the record was not sufficiently complete to determine whether interstate commerce was being unduly burdened, the court remanded the case for the taking of further testimony on this question and for conclusions in accord with that testimony.
Plaintiff also argued that enactment of these statutes constituted an invalid exercise of the police power. So far as that provision requiring certification that the milk dealer would purchase from New Jersey farmers an amount of milk equal to that called for in the contract during the contract year, the court held:
"The legislative goal, which we consider to be constitutionally permissible under our own constitution as well as under the fourteenth amendment [cases cited], was to aid in securing a sound local dairy farm industry in furtherance of the public welfare, by insuring to New Jersey farmers a market at least equivalent to the milk being purchased by the State itself and its subdivisions." (at p. 359; emphasis supplied)
As to the certification requirement for the preceding year, plaintiff argued it to be oppressive and unreasonable; defendants urged that this legislative requirement was designed *114 to facilitate administration of the acts and that had plaintiff not moved for summary judgment, they would have introduced testimony establishing this. Troubled by these conflicting arguments, the court thus remanded the case for further testimony on this issue as well.
The first line of inquiry for this court on the remand is whether N.J.S.A. 52:25-23 and N.J.S.A. 18:7-64 constitute an undue burden on interstate commerce. That these statutes have some effect on interstate commerce is undisputed. Justice Jacobs, in his opinion in Garden State Dairies of Vineland, Inc. v. Sills, supra, recognized this fact.
"But the truth is that preferments of local products and local work effect some discriminations against interstate commerce though the discriminations may ordinarily be viewed as incidental or insubstantial and as not creating any undue or unreasonable burden on interstate commerce." (Citations omitted)
The question remains, then, as to the probable effect of these statutes on interstate commerce. In order properly to make this evaluation it becomes necessary to examine each of the two requirements separately, since the effect of each will differ. The Supreme Court recognized this fact in stating that these requirements are severable for purposes of determining their validity. The requirement of certification for the contract year will be treated first.
It is manifest from the evidence that the dairy industry in New Jersey is deteriorating. Production has been steadily decreasing while the demand for fluid milk is constantly rising. Thus, in 1962 New Jersey dairy farmers produced 519,236,401 quarts of milk while the New Jersey residents consumed 851,810,588 quarts. Production was approximately 61% of requirements. According to figures submitted by defendants, in 1966 production of milk was down to 428,350,747 quarts while consumer demand had risen to 888,557,204 quarts. Production was approximately 48% of requirements. Figures submitted by plaintiff vary slightly, but substantially support the above-mentioned percentages.
*115 Defendants also submitted estimated figures of fluid milk consumed in public schools and by state agencies for the years 1962 through 1966. The figures were arrived at by calculating the percentage of milk consumed in New Jersey between July 1966 and February 1967 attributable to milk supplied to public schools, and the percentage of milk consumed in New Jersey between November 1964 and February 1967 attributable to state agencies. These percentages were applied to actual consumption of milk for the years 1962-66. Although the resultant figures cannot be considered accurate, this court believes they represent a fair appraisal of the situation. Thus, it would appear that consumption of fluid milk in New Jersey public schools has risen from 31,849,198 quarts in 1962 to 33,223,154 quarts in 1966. For state agencies the amount of milk consumed rose from 587,749 quarts in 1962 to 613,104 quarts in 1966.
A comparison of this rising consumption rate of state agencies and public schools with the decreasing production rate of New Jersey milk indicates that while in 1962 6.2% of production went to these, in 1966 this figure had risen to about 8%. It would appear, then, that the result of the "current year" requirement is to guarantee New Jersey farmers a market of at least 8% of their production, and the fact that production is decreasing while consumption in state agencies and schools is rising indicates that this figure will become even greater. However, the court does not feel that this percentage figure can properly be utilized in determining the probable effect on interstate commerce; to define the relevant market as only that of schools and state agencies is too narrow for an accurate picture of this effect. Rather, the court must consider the impact of this second requirement, certification as to the contract year, on the entire New Jersey market, both total production and total statewide consumption.
The constant ratio of milk consumed by state agencies and public schools to total New Jersey consumption is 3.8%. Therefore, viewing the second requirement in this light, it *116 becomes clear that actually only 3.8% of the total state market is effectively guaranteed to the New Jersey dairy farmer. This means that 96.2% of the market remains free of any burdens on interstate commerce. Indeed, the 3.8% is a minimal burden at best. It is also important to note that while 3.8% of consumption is guaranteed to New Jersey dairy farmers, the milk sold pursuant to these statutes is in no way restricted to New Jersey. It can be sold anywhere the dealer wishes; the only requirement is that if he wishes to supply the State or its subdivisions with milk, he must, at some point during the term of the contract, purchase an equivalent amount of New Jersey milk. No embargoes have been placed on out-of-state milk coming into New Jersey, or in the exporting of New Jersey milk. The end result is that while the statutes effectively guarantee the New Jersey farmer a market for 3.8% of his milk, they attempt to minimize the burden on interstate commerce by allowing suppliers to use milk purchased from foreign producers to actually fulfill the milk contracts with the State. Therefore, foreign producers are able to compete with local producers for this state market. Thus, while it is true that some burden has been effected against interstate commerce, this court does not find that it is sufficiently great to invalidate the "current year" certification requirement of these two statutes.
Such is not the case in regard to the first or additional certivcation requirement which provides that prospective bidders must certify to the effect that they have purchased from New Jersey farmers an equal amount of milk with that to be supplied under the contract during the year immediately preceding that of the contract. It may reasonably be assumed that many milk dealers would be anxious to obtain state milk contracts. Since each one must meet this certification requirement to be eligible to bid, he must purchase an amount of milk in the preceding year which is equivalent to the amount required under the contract sought. *117 Thus, we are no longer talking in terms of a maximum of 3.8% of the total market; the percentage involved increases in proportion to the number of bidders on each contract. It is obvious that the probable burden on interstate commerce is no longer incidental or insubstantial. To illustrate, assume that on each contract offered there were five bidders. They would of necessity have had to purchase a minimum of 19% of the total milk consumed in New Jersey in order to make proper certification. This 19% would have to be milk produced in New Jersey; the probable burden on interstate commerce has thus risen considerably. It is therefore the conclusion of the court that this additional requirement constitutes an undue burden on the free flow of interstate commerce.
Nor is this the only fault this court finds with the above-mentioned requirement; it may also be stricken as an invalid exercise of the police power. It is well established that a state may validly enact statutes in an area normally delegated to the Federal Government where the public health, safety, morals or general welfare are concerned. Hudson County News Co. v. Sills, 41 N.J. 220 (1963); Jones v. Haridor Realty Corp., 37 N.J. 384 (1962); Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55 (1960). The regulation or restriction must be reasonably related to and have as its prime objective the protection of the health, safety or welfare of the community. Miller v. Williams, 12 F. Supp. 236 (D. Ct., Md. 1935). Generally, it is presumed that the Legislature had these objectives in mind when enacting the legislation in question. Hudson County News Co. v. Sills, supra. Thus, the rule has evolved that only when the contested legislation is clearly arbitrary, capricious and unreasonable will it be stricken by the court. Adler's Quality Bakery, Inc. v. Gaseteria, Inc., supra. Such is the case with the "preceding year" certification requirement. This certification bears no relationship to the quality or wholesomeness of the milk which the vendor will furnish under the contract if he is the successful bidder. Consequently, *118 it cannot be construed as a health measure. Nor can it be contended that the legislative goal is to secure a sound local dairy farm industry in furtherance of the public welfare by insuring to New Jersey dairy farmers a market at least equivalent to the milk being purchased by the State itself, the reason given by our Supreme Court for the validity of the "current year" certification requirement under the police power. The only reason advanced by defendant to justify this requirement is that it facilitates enforcement and eases the administrative burden. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).
Testimony indicated that by means of this certification requirement it was possible in many cases to establish that the bidder on a present contract has had a consistent supply of New Jersey milk in the past, and from this it can be assumed that his source will probably continue and will be in the proper amount to fill the contract requirements. However, a consistent source is not essential under the statutes; a dealer need only purchase an equivalent of milk at some point during the contract term. Furthermore, the fact that a dealer has been limited in the past to out-of-state sources in no way precludes the likelihood of his complying with the "current year" requirement of the statutes. In short, although the proper certification under the "preceding year" requirement may in many cases tend to prove compliance with the "current year" requirement, proper enforcement of the statutes will still require a survey of each contracting dealer's purchase at the end of the contract term. Thus, it can hardly be said that the "preceding year" requirement results in a lessening of the administrative burden. Instead, the only real effect is that of excluding from bidding on contracts with the State or its subdivisions businesses which are now new or which in the past have relied on out-of-state sources for their milk; that is, this requirement does nothing more than reward dealers who have patronized New Jersey dairy farmers with some degree of substantiality *119 by allowing only these to bid for state contracts. This court cannot sustain such a provision under the guise of the police power.
Since the legislative intent is adequately safeguarded by the "current year" requirement alone, and since voiding the first requirement would in no way hinder the carrying out of this intent, Lane Distributors v. Tilton, 7 N.J. 349 (1951), this court is of the opinion that the "preceding year" requirement is severable under N.J.S.A. 1:1-10 and that the statutes in question are unconstitutional only insofar as they require the additional certification as to purchases for the previous year.
Judgment will be entered accordingly.